Date signed July 30, 2015



THOMAS J. CATLIOTA
U. S. BANKRUPTCY JUDGE

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MARYLAND
## at GREENBELT

| | | |
|---|---|---|
| In re: | * | Case No. 12-32701-TJC |
| Steven F. Madeoy | * | Chapter 7 |
| Debtor | * | |
| * * * * * * * * | * | |
| Roger Schlossberg, Chapter 7 Trustee | * | |
| Plaintiff | * | |
| vs. | * | Adversary No. 14-00882-TJC |
| Steven F. Madeoy, *et al.*, | * | |
| Defendants | * | |
| * * * * * * * * * * * * * | | |

## <u>MEMORANDUM OF DECISION</u>

Roger Schlossberg, the Chapter 7 Trustee ("Trustee") brought this 22 count complaint against the debtor Steven F. Madeoy (the "Debtor"), his wife Melanie Madeoy, and 51 other defendants. The complaint alleges that the Debtor, both before and during the bankruptcy case, with the aid of his wife, business partners, associates, and others, engaged in a scheme to defraud creditors and investors by transferring property outside the reach of creditors and the Trustee. The transfers allegedly created the appearance of a nearly empty estate and allowed Melanie Madeoy and the Debtor's business partners to shelter assets. As a result, the Trustee alleges that

approximately $4.5 million was funneled to his wife, her affiliated companies and her living trust, and additional funds were transferred to the Debtor and his business associates.

Now before the court are four motions to dismiss the complaint, filed by the various defendants as follows:  (1) Minnesota Corner, LLC ("Minnesota Corner") filed a motion to dismiss counts 1-6, 8-12, 14-16, and 22, ECF No. 113; (2) Jennifer Norris ("Jennifer") filed a motion to dismiss counts 1-11, 16, 17, 19, 20, and 22, ECF No. 114; (3) Todd Norris ("Norris") (collectively the "Norrises") filed a motion to dismiss counts 1-11, 16, 17, 19, 20, and 22, ECF No. 115; and (4) the Debtor, along with Melanie Madeoy ("Melanie"), George Christopher, trustee ("Christopher"), David Scott Posey ("Posey"), Paul Kurtz ("Kurtz"), Barbara Gibson ("Gibson"), Amalgamated Holdings, Inc. ("Amalgamated" or "AHI"), Crosstown Properties, LLC ("Crosstown"), JTRS, Incorporated ("JTRS"), LWBR, LLC ("LWBR"), MRC Investors, LLC ("MRC"), Girard LLC ("Girard"), and the Rose Cook Land Company ("Rose") filed a motion to dismiss counts 1-15 and 18-22, and also seek a determination that the Trustee's counsel violated 28 U.S.C. § 1927.  ECF No. 120. [1]  For the reasons that follow, the court determines Counts 1, 2, 3, 4, 9, 11, 13, 14, and 18 state claims against certain defendants, and will dismiss the remaining counts without prejudice to allow the Trustee to file an amended complaint.

The Trustee's primary defense to the motions is that the defendants "stonewalled" him on the production of documents in response to his Bankruptcy Rule 2004 discovery requests.  He relies on the principle that courts liberally interpret Federal Rule of Civil Procedure 9(b) where the plaintiff is a trustee.  He argues the policy behind this principle is especially furthered where the defendants engaged in dilatory tactics that made it difficult for the Trustee to gain a complete

---

[1] Two other defendants also filed motions to dismiss, Baxter Twelfth Street, LLC (ECF No. 112) and Corporate Authority Group, LLC, Federal Management Center, LLC, and Business Broker Advisors, LLC (ECF No. 137). The Trustee voluntary dismissed these defendants.  ECF Nos. 166 and 226.

understanding of the estate's claims before those claims were time barred. For their part, the defendants contend they responded fully to all of the Trustee's requests and that his lament over the document production is an effort to camouflage a lack of merit to his claims.

Although the usual rule in this district is that once an adversary proceeding is filed discovery must proceed in accordance with the Federal Rules of Civil Procedure, the court will give the Trustee twenty-one days to file a motion to compel the production of documents that are responsive to requests that were outstanding on the date he filed the complaint.

### FACTS AS ALLEGED IN THE COMPLAINT

On December 21, 2012, the Debtor filed a voluntary petition for a Chapter 7 bankruptcy. The Trustee is the Chapter 7 trustee and brings this suit in that capacity.

In August 2001, Michael Friedman ("Friedman"), the Debtor, and Norris formed TMS for the purpose of "acquiring, owning, managing, improving, leasing, selling, and otherwise operating real property located in Washington, D.C., Maryland, and Virginia." ECF No. 1 at ¶ 119. In 2004, Posey was given a 10% interest in TMS and the other three members reduced their interest to 30% each. *Id.* at ¶ 122. Gibson worked as an office manager and bookkeeper for the Debtor's businesses.

TMS "purchased, held, improved, leased, and sold properties and acted as the management company for those properties." *Id.* at ¶ 123. Title to each property was held by a separate limited liability company, which was owned by the Debtor, Friedman, Norris, and Posey. Whether or not formally written in an operating agreement, the members each held the same ownership interest in nearly every LLC, and distributions from the sales of the properties were made according to the ownership interests. The numerous LLCs are identified in the

complaint. *Id.* at ¶¶ 38-40, 42-45, 47-48, 50, 52-56, 58, 60-61, 64, 69, and 71. TMS acted as the management company for the properties.

In June 2004, the Debtor replaced Friedman as the managing member of TMS, and also acted as the managing member of the various LLCs. *Id.* at ¶ 126. The TMS operating agreement provided the Debtor with full authority to act as agent on its behalf, while also adhering to the required fiduciary duties. Norris was a non-managing member in TMS and the other entities which TMS managed. *Id.* at ¶¶ 127, 128.

Crosstown served a similar purpose to TMS, but was owned by the Debtor and Friedman, each having a 50% membership interest. Like TMS, Crosstown did not hold title to real property, but collected rent and managed properties held by LLCs in which the Debtor, Friedman, Norris, and Posey held membership interests. Monies and assets held by Crosstown were comingled with the monies and assets of the entities that it managed. *Id.* at ¶ 133.

The Debtor, while in control of the various businesses and properties, would "jump" or "roll" investments from one TMS entity to Crosstown or an entity it managed, sometimes documenting the transfer and sometimes not. *Id.* at ¶¶ 138, 139. In addition to the investments that he rolled, the Debtor also rolled loans into the various entities and properties. *Id.* at ¶ 139. The effect of rolling a loan resulted in the loan remaining unpaid and having it recorded against another entity regardless of value or consideration given. In order to internally track this process, the Debtor would have Gibson create corresponding entries in a master excel spreadsheet, reflecting the debt as owed against another entity, without documenting the rolled loan. As a result, the financial documents showed false liabilities owed by various entities. *Id.* at ¶ 141. On multiple occasions the Debtor concealed from investors and lenders that properties had been sold, and that their loans had been rolled over to another property. *Id.* at ¶ 142.

4

The Debtor also began to include non-related charges and disbursements on the settlement sheets of properties he sold through TMS. These charges and disbursements were payable to the individual defendants, related entities, and himself. *Id.* at ¶ 130.

*Transfers to Melanie*

In mid-2012, the Debtor ceased operating TMS and Crosstown as management companies and began to redirect commissions and fees to be paid to JTRS and the other defendants. *Id.* at ¶ 144. The Debtor and Melanie owned JTRS as tenants by the entirety. It was formed for the purpose of managing properties previously managed by Crosstown. As a result of the transfers, commissions and disbursements were paid to Melanie and the other defendants. *Id.* at ¶¶ 145-147.

The Melanie Cook Madeoy Living Trust (the "Living Trust") was formed on January 4, 2013. The Living Trust, of which Melanie is the settlor and Christopher is the trustee, was "formed to receive and manage assets for the benefit of Melanie during her lifetime, and to further manage and distribute assets of the Living Trust upon her death." *Id.* at ¶ 20. The Living Trust took title to various interests and entities acquired immediately prior to the Debtor's bankruptcy and after. It is the last known entity to be created as part of the conspiracy and concealment of property of the estate and fraudulently conveyed assets.

The following entities, assets, and personal property were transferred to the Living Trust on February 11, 2013: (1) Amalgamated which is 100% owned by Melanie, however she assigned 100% equity ownership interest to the Living Trust; (2) MRC which was formed in 2010 and is owned by Amalgamated, however Melanie assigned 100% equity ownership interest to the Living Trust; (3) a 50% ownership of Girard; (4) a 50% ownership of Seton, LLC; (5) a

5

50% ownership of JTRS; (6) a 50% ownership in Minnesota Corner; and (7) $143,375 worth of jewelry.  *Id.* at ¶¶ 21-28.

In addition to the primary entities held by Melanie, the Trustee alleges that numerous subsidiaries entities exist:

- Corporate Authority Group, LLC ("CAG") is owned equally by Amalgamated and Business Broker Advisors, LLC.  *Id.* at ¶ 29.

- Federal Management Center, LLC is owned by CAG which holds an 87.5% membership interest and Marjorie Shapiro who holds a 12.5% membership interest.  *Id.* at ¶ 30.

- 417 18th St., NE, LLC, in which Melanie, Posey, and Arthur Poms hold a 33.3% membership interest.  This entity was not assigned to the Living Trust and the Trustee believes it may have been liquidated in 2012.  *Id.* at ¶ 31.

- Harbour Portfolio V, LLC ("Harbour"), is an entity owned by Charles A. Vose, James Temme and Melanie and each held a 33.3% membership interest.  The 2011 K-1 statement shows Melanie transferred her membership interest to Charles Vose III on July 31, 2011.  *Id.* at ¶ 32.

The Debtor's and Melanie's tax returns show the effect of transfers to Melanie. Specifically, between 2009 and 2013, tax records and limited bank records show "transfers of over $4.5 million to businesses owned or organized shortly before and after the bankruptcy in the name of Melanie."  *Id.* at ¶ 77.

The 2009 federal tax returns reflect a loss of $509,028, all attributable to the Debtor's activities.  The Debtor listed twelve business entities that he owned and two parcels of property.

In addition, the 2009 federal tax returns show no income attributable to Melanie through K-1 distributions.  *Id.* at ¶¶ 78-81.

However, the returns for the years 2010, 2011, 2012, and 2013 show an increasing amount of income and distributions to Melanie on account of the Debtor's investments.  For example, in 2010, Melanie, for the first time, filed a Schedule C - "Profit or Loss from Business" - statement which reflected a gross income of $4,500 and a net loss of $32,055.  In addition, her schedules showed $2,206.79 in an account for MRC and total current assets of $152,206.79 and total liabilities of $184,262.  *Id.* at ¶¶ 82-84.

The 2011 federal tax returns indicate a loss attributable to the Debtor in the amount of $2,864,753 and income of $217,448 attributable to Melanie.  *Id.* at ¶ 89.  Both Melanie and the Debtor disclosed K-1 income in 2011.  The Trustee alleges that the source of funds for Melanie's investments in MRC, Harbour, and all subsequent investments came from the Debtor's property and was diverted to her.  *Id.* at ¶¶ 90-92.  Additionally, Melanie's Schedule C - "Profit or Loss from Business" - reflected gross income of $77,587 and a profit of $5,598.  *Id.* at ¶ 93.

The 2012 federal tax returns of the Debtor and Melanie reflect a net loss attributable to the Debtor in the amount of $777,187 and income attributable to Melanie in the amount of $730,369.  Melanie's Schedule C -"Profit or Loss from Business" - for MRC declared net income of $1,021,869 on gross receipts of $1,517,868.  *Id.* at ¶¶ 95-97.

The 2013 federal tax returns show a net loss to the Debtor of $699,805 and income to Melanie of $453,554.  In addition, their W-2 wages were declared to be $1,775.  This amount is attributable to the Debtor from JTRS, which the Debtor previously swore had no value.  *Id.* at ¶¶ 103, 104.  The 2013 K-1 interest income indicates that the Debtor received zero dollars and Melanie received $115,627 from Amalgamated.  *Id.* at ¶ 105.

MRC, which was formed in 2010, began to receive "funds, business opportunities, and assets from the [Debtor]."  *Id.* at ¶ 88.  The MRC account at BB&T received deposits prior to the Debtor's bankruptcy and after the bankruptcy.  Specifically, $480,580.95 was deposited into the MRC account between November 2, 2010 and December 21, 2012.  *Id.* at ¶ 99.

In addition to the pre-petition deposits, MRC also received $609,868 ten days after the Debtor's petition was filed and a total of $763,706.47 in the ninety-day period following the petition date.  *Id.* at ¶ 99.   In the two years following the bankruptcy, between December 21, 2012 and November 14, 2014, the total sum deposited into the MRC bank account totaled $3,117,236.66.  *Id.* at ¶ 100.

The Debtor scheduled JTRS with a value of $0 on the petition date.  Between February 10, 2011 and December 18, 2012, payments to JTRS totaled $13,741.79.  *Id.* at ¶¶ 107-10.

Following the filing of the bankruptcy petition, money continued to flow freely between the various entities owned or controlled by the individual defendants.

Amalgamated is owned by Melanie and was formed on or around January 28, 2013, and became the 100% shareholder of MRC, 50% owner of CAG, Minnesota Corner, and Girard.  The Amalgamated bank account at BB&T received deposits from January 30, 203 to November 18, 2014 totaling $1,270,766.74.  That total includes a deposit from Gibson in the amount of $10,000 and from Melanie in the amount of $50,000.  The Debtor, either directly or indirectly, transferred the money into Amalgamated's account.  *Id.* at ¶¶ 101, 102.

Post-petition payments made to JTRS between December 28, 2012 and September 26, 2014 total $166,512.22.  *Id.* at ¶ 109.  None of the post-petition payments were turned over to the Trustee.  *Id.* at ¶ 110.

*Transfer to Schaechter*

The Debtor also recorded a lien encumbering property owned by 3501 13th St, NW, LLC. The lien was fraudulent because it secured a personal loan to the Debtor from Robert Schaechter. Although Schaechter is not a defendant, the nature of this transaction evidences the Debtor and his business partners' inability to maintain corporate formalities. *Id.* at ¶ 87.

*Transactions between the Madeoys and the Norrises*

During 2010, the Debtor pledged his 30% membership interest in TMS to Norris as security for a nonexistent debt. *Id.* at ¶ 86.

In addition, the Madeoys and Norrises maintained a close personal and business relationship. As a result of the personal and business relationship the Norrises have engaged in multiple transactions to assist the Debtor. During 2010, the Debtor and Melanie ceased making mortgage payments on their Sorrel Avenue home, and "engineered and structured a short sale to their friends and business partners," the Norrises. *Id.* at ¶ 85. The Norrises then continued to allow the Debtor and Melanie to live in the house as tenants. The Debtor's bankruptcy Schedules did not list a lease for property, but it is claimed that rent is $180,000 per year. *Id.* at ¶¶ 172-174. Also, the Norrises provided the Debtor, pre-petition, with a credit card to transact business. The purchases on the credit card, both personal and business related, have been paid for by the Norrises but with money paid directly by the Debtor to Norris. *Id.* at ¶ 178-181.

Prior to filing the bankruptcy petition, the Debtor transferred money to the Norrises on three separate occasions. On July 3, 2011, the Debtor paid the Norrises $172,924.00. On May 12, 2012, the Debtor paid the Norrises $70,271. On June 22, 2012, the Debtor paid the Norrises $487,106. *Id.* at ¶¶ 185-187. The Debtor, either individually or through his entities, also made post-petition transfers to the Norrises. In 2013, the real property located at 5810 Blair Road was

sold and $70,271 was disbursed on account of the Debtor's 30% interest. At settlement, those proceeds were transferred to Norris instead of the Trustee. *Id.* at ¶¶ 188-190.

Between September 3, 2013 and November 26, 2014, Melanie transferred to Norris approximately $83,392.25, in nineteen separate transfers, from a personal bank account at TD Bank. *Id.* at ¶ 113. During 2013, a distribution of $70,271.40 was made from TMS to Norris to repay a pre-petition debt owed by the Debtor individually to Norris. *Id.* at ¶ 116.

In 2013, the Debtor allegedly took a post-petition distribution from TMS. The funds were diverted to Norris, who subsequently used them to purchase the property on Minnesota Ave. A 50% interest in Minnesota Ave. was then gratuitously transferred to Melanie for no consideration. *Id.* at ¶ 136. However, this "gift" was actually a payment on account of transfers of the Debtor's property pre – and post-bankruptcy. *Id.* at ¶ 191.

*Loan to Kurtz*

In October 2009, the Debtor loaned Kurtz approximately $60,153.31 to pay restitution to the federal government. Kurtz has not repaid the loan and the Debtor failed to list it on his bankruptcy schedules. *Id.* at ¶¶ 192, 193.

## LEGAL STANDARDS

The various defendants moved to dismiss the complaint under Fed. R. Civ. P. 12(b)(6) and 9(b), made applicable to this adversary proceeding by Fed. R. Bankr. P. 7012 and 7009.

### Fed. R. Civ. P. 12(b)(6)

"[T]he purpose of Rule 12(b)(6) is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999) (internal quotation marks and alternations

omitted).  When ruling on a motion to dismiss, the court must "accept the well-pled allegations of the complaint as true," and "construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff."  *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997).

To survive a motion to dismiss, a complaint must "contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 667 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id. See also, Twombly,* 550 U.S. at 570 (plaintiffs must nudge their claims "across the line from conceivable to plausible.").  The Supreme Court has noted that the plausibility determination is "a context specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Ashcroft*, 556 U.S. at 679.  When presented with a complaint, a court may look to "more likely explanations" to find that the allegations do not plausibly establish the claim.  *Id.* at 681.

**Fed. R. Civ. P. 9(b)**

Rule 9(b) seeks to provide a defendant with sufficient and fair notice of the plaintiff's claim in order to enable that defendant to defend him or herself.  The Fourth Circuit has found that to satisfy the Rule 9(b) pleading requirements, the complaint must identify with particularity "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby."  *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999).  Mere allegations of "fraud by hindsight" will not satisfy the requirements of Rule 9(b).  *Hillson Partners Ltd. Partnership v.*

*Adage, Inc.*, 42 F.3d 204, 209 (4th Cir. 1994). "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other conditions of mind of a person may be averred generally." Fed. R. Civ. P. 9(b). In essence, "a court should hesitate to dismiss a complaint under Rule 9(b) if the court is satisfied (1) that the defendant has been made aware of the particular circumstances for which she will have to prepare a defense at trial, and (2) that plaintiff has substantial pre-discovery evidence of those facts." *Harrison*, 176 F.3d at 784.

Moreover, where a case involves multiple defendants, Rule 9(b) requires that the complaint must allege all claims with particularity as to each defendant. *Dealers Supply Co., Inc. v. Cheil Industries, Inc.*, 348 F.Supp.2d 579, 589-90 (M.D.N.C. 2004). "The identity of the person making the misrepresentation is particularly important where there are multiple defendants." *Id.* at 590. The court in *Dealers Supply Co.* relied upon a Northern District of Illinois case which held that "[t]he identity of those making the misrepresentations is crucial. Courts have been quick to reject pleadings in which multiple defendants are 'lumped together' and in which 'no defendant can determine from the complaint which of the alleged representations it is specifically charged with having made, nor the identity of the individual by whom and to whom the statements were given." *Id.* (quoting *McKee v. Pope Ballard Shepard & Fowle, Ltd.*, 604 F.Supp. 927, 931 (N.D.Ill. 1985)).

## CONCLUSIONS OF LAW

*The Trustee's Rule 2004 Investigation*

In the motions to dismiss, the defendants address each count of the complaint and argue the Trustee fails to state a claim for each count or fails to plead with specificity those counts that are subject to Rule 9(b). ECF Nos. 113,114,115, and 120. In response, the Trustee did not

12

defend the adequacy of the causes of action in the complaint.  ECF Nos. 157-161.  Rather, he

relies on two principles and argues they provide an overriding defense to the motions.

First, the Trustee relies heavily upon the proposition that courts liberally construe Rule

9(b) where the plaintiff is a trustee.  *See In re Air Cargo, Inc.*, 401 B.R. 178, 194 (Bankr. D. Md.

2008) (applying Rule 9(b) to a claim of negligent misrepresentation, but construing it liberally

because the action was brought by a litigation trustee).  This district has recognized the holding

that the heightened pleading requirements of Rule 9(b) should be relaxed when a third party

trustee files the claim because the trustee "has no first-hand knowledge of the prepetition acts

that gave rise to the alleged fraud, and may or may not receive the cooperation of the debtor in

this regard."  *Miller v. Dutil (In re Total Containment)*, 335 B.R. 589, 600-01 (Bankr. E.D. Pa.

2005) quoted by *In re Barton-Cotton, Inc.*, No. 09-12066-DK, 2012 WL 2803742 (Bankr. D.

Md., July 10, 2012).  *See also In re Everfresh Beverages, Inc.*, 238 B.R. 558, 581 (Bankr.

S.D.N.Y. 1999) ("In the bankruptcy context, however, courts have noted that Rule 9(b) should be

interpreted liberally, particularly when the trustee, a third party outsider of the fraudulent

transactions, is bringing the action.").

Relaxing the particularity requirement in bankruptcy cases, however, should not be

construed to eliminate that requirement altogether.  *See Securities Investor Protection Corp. v.

Stratton Oakmont, Inc.*, 234 B.R. 293, 311 (Bankr. S.D.N.Y. 1999).  The court will apply this

pleading principle as applicable, but notes that it cannot be used as a substitute for a complete

failure to state a claim for relief against a particular defendant.

Second, the Trustee contends that because "the defendants failed to completely respond

to discovery, principles of estoppel should apply to bar the defendants' arguments that the

Trustee did not plead certain counts with specificity."  ECF No. 157-1 at p. 28.  The discovery to

which the Trustee refers is the extensive investigations he made under Bankruptcy Rule 2004 before filing the complaint.  As a newcomer to these transactions and parties, the investigative tools provided to the Trustee are crucial to enable him, as for all trustees, to obtain an understanding of the assets and transactions of the estate and to determine whether factual support exists to bring claims.

The potential prejudice to a trustee by a failure to respond completely to the trustee's investigation is exacerbated by two additional considerations at play here.  It has long been the rule in this District that once an adversary proceeding is initiated, discovery under Bankruptcy Rule 2004 is no longer available on matters related to the adversary proceeding, and discovery of such matters must proceed in accordance with the Federal Rules of Civil Procedure.  *In re Szadkowski,* 198 B.R. 140, 142-43 (Bankr. D. Md. 1996).  In this context, Bankruptcy Rule 2004 discovery is a "pre-litigation device for assessing whether grounds exist to commence an action…" while, once the action is commenced, discovery may be had only pursuant to the discovery provisions of the Federal Rules of Civil Procedure.  *Id*.

A trustee's pre-litigation opportunity for assessing potential claims is not unlimited.  A trustee faces various limitations provisions in the Bankruptcy Code for initiating actions.  *See e.g.*, 11 U.S.C. § 546(a).  Quite obviously, it is to a potential defendant's advantage to stonewall – to use the Trustee's term in this case – responding to a trustee's inquiries until the applicable limitations deadline runs, or at least is sufficiently close that a trustee must decide whether to proceed with the information at hand.

In this case, the Trustee filed his complaint on December 20, 2014, immediately before the expiration of the two-year limitations period of 11 U.S.C. § 546(a).  In the months prior to that date, the Trustee and a number of the defendants were before the court on numerous and

seemingly constant disputes over the scope and completeness of the defendants' responses to the Trustee's Rule 2004 requests. The Trustee filed his complaint timely, but argues that he was deprived of much necessary information to bring his claims due to the defendants' dilatory tactics. He argues that, if he has failed to state a claim against any defendants with particularity, it is because they withheld necessary information that would have enabled him to more fully assert his claims. The defendants vigorously dispute they have failed to respond fully to any outstanding request.

Under the circumstances, the Trustee will be given one last opportunity to resolve any outstanding Rule 2004 requests. The Trustee shall have twenty-one days to bring any motions to compel the production of documents responsive to Rule 2004 or other requests that were outstanding on the day he filed the complaint.[2] Generalities will not suffice; the Trustee must identify the specific requests and the specific party who has failed to respond completely. The court will take into account the time necessary to resolve the document production disputes in fashioning an appropriate deadline for the Trustee to amend the complaint.

*Sufficiency of the Complaint*

The complaint contains some 200 paragraphs of factual allegations leading to the assertion of twenty-two Counts. Many of the Counts, however, merely contain conclusory recitations of the elements of each Count, and tend to lump many defendants together without a specific description of how the Counts apply to each defendant. It should be neither the task of each defendant nor the court to sift through 62 pages of factual allegations against fifty-three defendants and determine whether those allegations state a claim for relief. This is particularly

---

[2] Jennifer Norris is excluded from this procedure. Discovery of her role in the affairs of he Debtor and Todd Norris was resolved in Adversary Proceeding No. 13-717.

true here, where the Trustee did not defend the sufficiency of the claims in his opposition to the defendants' motions to dismiss.

In light of the foregoing, and considering the process the court has established to resolve any lingering Rule 2004 production issues, little would be served by parsing through all twenty-two counts to determine which state a claim for relief against the fifty-three defendants. In the interest of moving the matter forward to the extent available on this record, the court will identify here those claims that plainly state a claim for relief against certain defendants, and provide an opportunity for the Trustee to amend the complaint.

The complaint asserts the following 22 counts: Count 1 – Civil Conspiracy and Fraud; Count 2 – Fraudulent Transfer under 11 U.S.C. §§ 548 and 550; Count 3 – Fraudulent Conveyance under the Maryland Uniform Fraudulent Conveyance Act §§ 15-203, 15-204, 15-205, 15-206, 15-207, and 15-208 and 11 U.S.C. § 550; Count 4 – Fraud; Count 5 – Constructive Fraud; Count 6 – Alter Ego; Count 7 – Preference under 11 U.S.C. §§ 547 and 550; Count 8 – Unauthorized Post-Petition Transfer under 11 U.S.C. §§ 549 and 550; Count 9 – Recovery of Fraudulent Transfers under 11 U.S.C. § 550; Count 10 – Conversion; Count 11 – Concealment and/or failure to disclose; Count 12 – Declaratory Relief under 28 U.S.C. § 2201 and Constructive Trust; Count 13 – Turnover under 11 U.S.C. §§ 542 and 550; Count 14 – Breach of Contract for Monies Due; Count 15 - Declaratory Relief under 28 U.S.C. § 2201 and Constructive Trust; Count 16 - Turnover under 11 U.S.C. § 542; Count 17 - Declaratory Relief under 28 U.S.C. § 2201 and Constructive Trust; Count 18 – Spousal Liability under Md. Code, Fam. Law § 4-301(West); Count 19 – Accounting under 11 U.S.C. § 542; Count 20 – Injunction; Count 21 -  Turnover under 11 U.S.C. § 542; and Count 22 – Receivership.

**Count 1 (Civil Conspiracy to Commit Fraud)**

Count 1 alleges that the Count 1 defendants conspired to commit fraud.[3]  In Maryland, civil conspiracy is defined as "a combination of two or more persons by an agreement or understanding to accomplish an unlawful act or to use unlawful means to accomplish an act not in itself illegal, with the further requirement that the act or the means employed must result in damages to the plaintiff."  *Hoffman v. Stamper*, 385 Md. 1, 24, 867 A.2d 276, 290 (2005).  The tort plaintiff must prove "the commission of an overt act, in furtherance of the agreement, that caused the plaintiff to suffer actual injury."  *Id.* at 25, 290.  In Maryland, the "tort actually lies in the act causing the harm; the agreement to commit that act is not actionable on its own but rather is in the nature of an aggravating factor."  *Id.*  As such, civil conspiracy is not a separate tort capable of sustaining an award of damages in the absence of other tortious injury.  *Id.*  Accordingly, a court should not entertain a claim for civil conspiracy to commit fraud unless the plaintiff has sufficiently alleged an underlying fraud.  *See Alleco Inc. v. Harry & Jeanette Weinberg Found., Inc.*, 340 Md. 176, 199, 665 A.2d 1038, 1049 (1995).

In *Alleco Inc.,* plaintiffs accused defendants of a "civil conspiracy to commit fraud," but failed to allege the first element of a cause of action for fraud – that defendants made a false representation to plaintiffs.  *Id.* at 196, 1048.  In affirming dismissal of the civil conspiracy claim, the Maryland Court of Appeals reasoned:

> [I]n order to set forth a tort claim for civil conspiracy, the plaintiffs must adequately allege the existence of the underlying tortious activity. In the present case, the plaintiffs have failed to allege adequately the *underlying fraud.* For this reason, the circuit court's dismissal ... was correct.

*Id.* at 199, 1049.

---

[3] Count 1 is asserted against the Debtor, Melanie, the Living Trust, Christopher, Posey, Norris, Jennifer, Kurtz, Gibson, Crosstown, Seton LLC, AHI, MRC, Girard, Minnesota Corner, JTRS, 417 18th Street, NE, LLC, Harbour, TMS, John Doe, Jane Doe, John Doe, LLC, John Doe, Corp., and John Doe, Partnership.

Here, the Trustee alleges that the Count 1 defendants conspired with the Debtor to assist in or cause the improper transfer of money, property, entities, and membership interests that are property of the estate.  As discussed below in the context of Count 4, the complaint asserts a claim of fraud against the Debtor.  Thus the complaint meets the necessary predicate of stating a claim for the underlying tort.

The complaint contains extensive allegations of the involvement of Melanie in the transfers.  The court will deny the motion to dismiss Count 1 as to Melanie.

The complaint also states a claim of civil conspiracy against Kurtz.  It alleges that he engaged in the unauthorized practice of law and provided legal services to the Debtor and his entities in furtherance of the fraudulent conspiracy.  The complaint states that Kurtz invoked the Fifth Amendment against self-incrimination more than fifty times in his examination on the question of his involvement in the Debtor's activities.  The court will deny Kurtz's motion to dismiss Count 1.

The complaint, however, does not sufficiently identify, within the context of Count 1, sufficient facts to support a cause of action of conspiracy to commit fraud as to any of the other Count 1 defendants.  As stated above, it is not for the fifty-three defendants or the court to sift through 200 paragraphs of factual allegations and determine which apply to them and support the claim under Count 1.  As such, Count 1 is dismissed without prejudice as to all defendants other than Melanie and Kurtz.

**Count 2 (Fraudulent Transfers under 11 U.S.C. §§ 548 and 550)**

Count 2 seeks to avoid certain pre-petition transfers under 11 U.S.C. §§ 548 and 550 allegedly made to the Count 2 defendants.[4]

---

[4] Count 2 is asserted against Melanie, the Living Trust, Posey, Norris, Jennifer, Kurtz, Gibson, Crosstown, Seton LLC, AHI, MRC, Girard, Minnesota Corner, JTRS, 417 18th Street, NE, LLC, Harbour, TMS, and the John Does.

The Bankruptcy Code provides that a trustee or debtor-in-possession may avoid a transfer under § 548 of the Bankruptcy Code if the debtor had an interest in the property and the transfer was made within two years before the petition date "with actual intent to hinder, delay, or defraud" creditors, or on the ground that it was constructively fraudulent, *i.e.,* if the debtor "received less than a reasonably equivalent value in exchange for such transfer" and at the time either (i) was insolvent, (ii) undercapitalized, or (iii) illiquid, or became such as a result of the transfer.  11 U.S.C. §§ 548(a)(1)(A) and (B).  The transfer may be either actual or constructive fraud.  "[T]he Court must focus precisely on the specific transaction or transfer sought to be avoided in order to determine whether that transaction falls within the statutory parameters of either an intentional or constructive fraudulent conveyance."  *In re Geltzer*, 502 B.R. 760, 766 (Bankr. S.D.N.Y. 2013).  In order to survive a motion to dismiss a claim under § 548(a)(1)(A) the plaintiff must satisfy the pleading requirements of Rule 9(b), while a claim under § 548(a)(1)(B) "is based on the transferor's financial condition and the sufficiency of the consideration provided by the transferee, rather than fraud, the pleading with particularity requirement for Rule 9(b) does not apply."  *In re Derivium Capital, LLC*, 380 B.R. 429, 439 (Bankr. D.S.C. 2006).

Once a transfer has been avoided, § 550 provides that the trustee or debtor-in-possession "may recover for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property . . . ."  11 U.S.C. § 550(a).

Here again, the complaint states a claim under § 548 as to Melanie.  However, with respect to the remaining defendants, Count 2 suffers from the same deficiencies as described for Count 1.  As such, Count 2 is dismissed without prejudice as to all defendants other than Melanie.

**Count 3 (Fraudulent Conveyance under 11 U.S.C. § 550; Md. Comm'l. Law Article §§ 15-203, 15-204, 15-205, 15-206, 15-207, and 15-208)**

Count 3 seeks to avoid certain transfers under the Maryland Uniform Fraudulent Conveyance Act (MUFCA) § 15-201, et seq. [5]  The same rationale applies to Count 3 as for Count 2.  Therefore the court will deny the motion to dismiss Count 3 as to Melanie, and grant the motions to dismiss as to the remaining defendants.

**Count 4 (Fraud)**

Count 4 asserts a claim of fraud.[6]  Under Maryland law, the elements of fraud are:

> (1) that the defendant made a false representation to the plaintiff, (2) that its falsity was either known to the defendant or that the representation was made with reckless indifference as to its truth, (3) that the misrepresentation was made for the purpose of defrauding the plaintiff, (4) that the plaintiff relied on the misrepresentation and had the right to rely on it, and (5) that the plaintiff suffered compensable injury resulting from the misrepresentation.

*Alleco Inc.*, 340 Md. at 195, 665 A.2d at 1047 (1995).  The elements are written in the conjunctive, meaning that each element must be proven, and the absence of any one element means the count fails at this stage.

The Trustee alleges that the defendants made misrepresentations, including false statements in bankruptcy filings, recorded documents, settlement statements, and operating agreements for the purpose of defrauding the creditors.  In addition, false statements were allegedly made regarding transfers of money, property, and the legitimacy of encumbrances on

---

[5] Count 3 is asserted against Melanie, Christopher, the Living Trust, Posey, Norris, Jennifer, Kurtz, Gibson, Crosstown, Seton LLC, AHI, MRC, Girard, Minnesota Corner, JTRS, 417 18th Street, NE, LLC, Harbour, TMS, and the John Does.

[6] Count 4 is asserted against the Debtor, Melanie, the Living Trust, Posey, Norris, Jennifer, Kurtz, Gibson, Crosstown, Seton LLC, AHI, MRC, Girard, Minnesota Corner, JTRS, 417 18th Street, NE, LLC, Harbour, TMS, and the John Does.

properties allegedly securing loans.  The Trustee further contends that he and the creditors had a right to rely on the misrepresentations, including the false statements in the sworn bankruptcy filings in this bankruptcy case.  In addition to the alleged false statements made in the Debtor's bankruptcy case, the Trustee alleges that he and the creditors had a right to rely on operating agreements, which showed allegedly false ownership interests, and this was misleading.

To support these allegations the Trustee alleges that the Debtor's Schedules were inadequate because they contained omissions and misrepresentations.  ECF No. 1 at ¶ 11 n. 6. Specifically, the Debtor's interest in a number of limited liability companies was noticeably absent from his Schedules.  The Trustee also alleges that the Debtor failed to list certain credit card payments or repayments he made for the year before his petition date on his Statement of Financial Affairs.  *Id.* at ¶ 178.  He contends that this was done for the purpose of defrauding the Trustee and the creditors.  The purpose of the Schedules is to provide transparency into the financial life of the Debtor.  Under the Bankruptcy Code schedules are filed and signed under the penalty of perjury and a debtor has a legal obligation to truthfully disclose all assets and liabilities.  However, the Trustee has made numerous allegations that the Schedules do not reflect all of the Debtor's interests in various entities and personal property.  As a result of the alleged omissions on the Schedules, the Trustee alleges that estate has suffered financial harm.

The Trustee has stated a claim of fraud against the Debtor.  However, with respect to the remaining defendants, Count 4 suffers from the same deficiencies as those described for Count 1. As such, Count 4 is dismissed without prejudice as to all defendants other than the Debtor.

**Count 5 (Constructive Fraud) and Count 6 (Alter Ego)**

Count 5 asserts a claim of constructive fraud, while Count 6 asserts that all defendants should be held personally liable for all debts of the Debtor because they are his alter ego.[7]  Under Maryland law, the Court of Special Appeals has held that constructive fraud:

> is a breach of legal or equitable duty which, irrespective of the moral guilt of the fraud feasor, the law declares fraudulent because of its tendency to deceive others, to violate public or private confidence, or to injure public interests. Neither actual dishonesty of purpose nor intent to deceive is an essential element of constructive fraud.

*Scheve v. McPherson,* 44 Md.App. 398, 406, 408 A.2d 1071, 1076 (1979).  "Constructive fraud . . . usually arises from a breach of duty where a relationship of trust and confidence exists." *Hanley v. Doctors Exp. Franchising, LLC*, ELH-12-795, 2013 WL 690521, at *18 (D. Md. Feb. 25, 2013).  The types of legal duties that may give rise to a claim of constructive fraud are "duties whose breach has a tendency to deceive others, to violate public or private confidence, or to injure public interests." *Id.* (citation omitted).

The alter ego doctrine is generally applied "where the corporate entity has been used as a subterfuge and to observe it would work an injustice." *Hildreth v. Tidewater Equipment Co., Inc.*, 378 Md. 724, 735, 838 A.2d 1204, 1210 (2003).  "[U]under Maryland law, where there is no allegation of fraud, evidence or finding of fraud, the corporate veil may be disregarded nonetheless and personal liability established upon proof of a paramount equity." *Schlossberg v. Bell Builders Remodeling, Inc.*, 441 Md. 671, 672, 109 A.3d 1146 (2015).  While no universal rule exists as to the specific criteria that a court should consider in determining whether to apply

---

[7] Count 5 is asserted against the Debtor, Melanie, the Living Trust, Posey, Norris, Jennifer, Kurtz, Gibson, Crosstown, Seton LLC, AHI, MRC, Girard, Minnesota Corner, JTRS, 417 18th Street, NE, LLC, Harbour, TMS, and the John Does.  Count 6 is asserted against all defendants.

22

the alter ego doctrine, the court in *Hildreth* articulated five factors that have been commonly considered:

> (1) whether the corporation is inadequately capitalized, fails to observe corporate formalities, fails to issue stock or pay dividends, or operates without a profit, (2) whether there is commingling of corporate and personal assets, (3) whether there are non-functioning officers or directors, (4) whether the corporation is insolvent at the time of the transaction, and (5) the absence of corporate records.

*Hildreth*, 378 Md. at 735, 838 A.2d at 1210.

With respect to both Counts, the complaint generally recites a number of facts that, in theory at least, could support a claim under either count.   However, given the Trustee's response to the motions to dismiss, the Trustee has not stated how or why these factual allegations support a claim under either theory.  Counts 5 and 6 will be dismissed without prejudice to allow the Trustee to file an amended complaint.

## Count 7 (Preference under 11 U.S.C. § 547) and Count 8 (Unauthorized Post-Petition Transfers under 11 U.S.C. § 549)

Counts 7 and 8 seek the avoidance of certain transfers as preferences under § 547 and unauthorized post-petition transfers under § 549, respectively.[8]

Section 547(b) of the Bankruptcy Code provides that, with exceptions not relevant here, the trustee may avoid any transfer of an interest of the debtor in property:

> (1) to or for the benefit of a creditor;
>
> (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
> (3) made while the debtor was insolvent;
>
> (4) made –

---

[8] Count 7 is asserted against Posey, Norris, Jennifer, Kurtz, Gibson, Crosstown, JTRS, and the John Does.  Count 8 is asserted against the Debtor, Melanie, Seton LLC, AHI, MRC, Girard, Minnesota Corner, 417 18th Street, NE, LLC, Harbour, Apple Tree Holding, LLC, Posey, Norris, Jennifer, Kurtz, the Living Trust, Gibson, Crosstown, JTRS, TMS, and the John Does.

(A) on or within 90 days before the date of the filing of the petition;

    or

(B) between ninety days and one year before the date of the filing of petition, if such creditor at the time of such transfer was an insider; and

(5) that enables such creditor to receive more than such creditor would receive if –

    (A) the case were a case under chapter 7 of this title;

    (B) the transfer had not been made; and

    (C) such creditor received payment of such debt to the extent provided by the provisions of this title.

11 U.S.C. § 547(b).  "Unless each and every one of these elements is proven, a transfer is not avoidable as a preference under 11 U.S.C. § 547(b)."  *In re CVEO Corp.*, 327 B.R. 724, 728 (Bankr. D. Del. 2005).

Section 549(a) provides in pertinent part, that:

Except as provided in subsection (b) or (c) of this section, the trustee may avoid a transfer of property of the estate –
    (1) that occurs after the commencement of the case; and
    (2) (A) that is authorized only under section 303(f) or 542(c) of this title; or
     (B) that is not authorized under this title or by the court.

11 U.S.C. § 549(a).  To recover under a theory of unauthorized post-petition transfer the Trustee must satisfy four elements: "(1) a transfer, (2) of property of the estate, (3) made after the commencement of the case, and (4) that is not authorized under the Bankruptcy Code or by the bankruptcy court."  *In re Merry-Go-Round Enterprises, Inc.*, 400 F.3d 219, 224 (4th Cir. 2005).

The complaint identifies numerous prepetition and post-petition transfers.  But, as stated above, it is not for the court or the defendants to sort through the allegations to determine which state a claim for relief.  Moreover, after the complaint was filed, the Trustee obtained discovery

in a separate adversary proceeding against the Norrises, Adv. Proc 13-717, which may focus any potential avoidance actions against them. Counts 7 and 8 will be dismissed without prejudice to allow the Trustee to file an amended complaint.

**Count 9 (Recovery of Fraudulent Transfers under 11 U.S.C. § 550)**

In Count 9, the Trustee seeks the recovery of fraudulent transfers under § 550 against all defendants. Section 550(a) permits the Trustee to recover a transfer of property that has been avoided under §§ 544, 545, 547, 548, 548, 553(b) or 724(a), for the benefit of the estate, or, in the alternative, the trustee may recover the value of such property. Accordingly, this Count is dependent on the Trustee establishing his avoidance claims. Therefore, the court will deny Melanie's motion to dismiss Count 9, and will dismiss Count 9 as to the remaining defendants without prejudice.

**Count 10 (Conversion)**

In Count 10, the Trustee asserts conversion claims against the Count 10 defendants.[9] The Trustee asserts that all of the defendants transferred, controlled, exercised dominion over, or converted the property belonging to the Debtor to themselves or for their benefit.

Under Maryland law conversion is "any distinct act of ownership or dominion exerted by one person over the personal property of another in denial of his right or inconsistent with it." *Allied Inv. Corp. v. Jasen*, 354 Md. 547, 560, 731 A.2d 957, 963 (1999) (internal quotation and citation omitted). "The act of ownership for conversion can occur either by initially acquiring the property or by retaining it longer than the rightful possessor permits." *Darcars Motors of Silver Spring, Inc. v. Borzym*, 379 Md. 249, 261-62, 841 A.2d 828, 835 (2004).

---

[9] Count 10 is asserted against the Debtor, Melanie, the Living Trust, Posey, Norris, Jennifer, Kurtz, Gibson, Crosstown, Seton LLC, AHI, MRC, Girard, Minnesota Corner, JTRS, 417 18th Street, NE, LLC, Harbour, TMS, and the John Does.

> [T]he gist of a conversion is not the acquisition of the property by the wrongdoer, but the wrongful deprivation of a person of property to the possession of which he is entitled.  Nor need there exist a forcible dispossession of property to constitute an act of the defendant a conversion.  A conversion may consist of a wrongful, tortious or unlawful taking of property from the possession of another by theft, trespass, duress, or fraud and without his consent or approbation, either express or implied.

*Id.* at 262, 836 (quoting *Wallace v. Lechman & Johnson, Inc.*, 354 Md. 622, 732 A.2d 868 (1999)).

As a general rule, "monies are intangible and, therefore, not subject to a claim of conversion."  *Lasater v. Guttmann*, 194 Md. 431, 447, 5 A.3d 79, 88 (2010).  An exception exists "if the monies alleged to have been converted are specific segregated or identifiable funds."  *Id.* (internal quotation and citation omitted).  Once the monies are comingled with other funds they lose their separateness for purposes of conversion.  *Id.*

Here, the complaint asserts that the Count 10 defendants converted money.  However, the complaint fails to identify any "segregated or identifiable funds" in the possession of any defendant.  Accordingly, Count 10 will be dismissed without prejudice.

**Count 11 (Concealment and/or Failure to Disclose)**

In Count 11 the Trustee alleges that the Count 11 defendants failed to disclose facts material to the Trustee.[10]  It appears that this Count is in large part a restatement of Count 4.  The court will resolve Count 11 consistent with its resolution of Count 4.

**Count 12 (Declaratory Relief under 28 U.S.C. § 2201 and a Constructive Trust)**

In Count 12 the Trustee seeks declaratory relief and the implementation of a constructive trust against the Count 12 defendants.[11]

---

[10] Count 11 is asserted against the Debtor, Melanie, the Living Trust, Posey, Norris, Jennifer, Kurtz, Gibson, Crosstown, Seton LLC, AHI, MRC, Girard, Minnesota Corner, JTRS, 417 18th Street, NE, LLC, Harbour, TMS, and the John Does.

The Declaratory Judgment Act provides that, "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."  28 U.S.C. § 2201(a).  It is an elementary principle that a federal court may properly exercise jurisdiction in a declaratory judgment proceeding when three essentials are met: "(1) the complaint alleges an 'actual controversy' between the parties 'of sufficient immediacy and reality to warrant issuance of a declaratory judgment;' (2) the court possesses an independent basis for jurisdiction over the parties (e.g., federal question or diversity jurisdiction); and (3) the court does not abuse its discretion in its exercise of jurisdiction."  *Volvo Const. Equipment North America, Inc. v. CLM Equipment Company, Inc.*, 386 F.3d 581, 592 (4th Cir. 2004) (citations omitted).  "A federal court has the discretion to decline to entertain a declaratory judgment action, but . . . the court must do so only for 'good reason.'"  *Cont'l Cas. Co. v. Fuscardo,* 35 F.3d 963, 965 (4th Cir. 1994) (quoting *Aetna Cas. & Sur. Co. v. Quarles*, 92 F.2d 321, 324 (4th Cir. 1937)).  "In deciding whether to entertain a declaratory judgment action, a federal court should analyze whether its resolution of the declaratory action will settle all aspects of the legal controversy . . . . [I]t makes no sense as a matter of judicial economy for a federal court to entertain a declaratory action when the result would be to try a controversy by piecemeal, or to try particular issues without settling the entire controversy."  *Mitcheson v. Harris*, 955 F.2d 235, 239 (4th Cir. 1992).  Declaratory relief is appropriate when the court finds that "(i) it will serve a useful purpose in clarifying and settling the legal relations in issue, and (ii) it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding."  *Fuscardo,* 35 F.3d at 965 (quotation and citation omitted).

---

[11] Count 12 is asserted against the Debtor, Melanie, the Living Trust, Posey, Gibson, Crosstown, Seton LLC, AHI, MRC, Girard, Minnesota Corner, JTRS, 417 18th Street, NE, LLC, Harbour, Apple Tree Holding Company, L.L.C., TMS, and the John Does.

The Trustee seeks a declaratory judgment "determining which property is property of the estate possessed by the Defendants named in this Count."  ECF No. 1 at ¶ 300-a.  He contends that an actual case or controversy exists due to the circumstances under which the defendants in this Count have managed and operated the defendant entities.

Here again, however, Count 12 does not identify a sufficient factual basis for a declaratory judgment against any particular defendant.  Accordingly, Count 12 will be dismissed without prejudice.

**Count 13 (Turnover under 11 U.S.C. §§ 542 and 550) and Count 14 (Breach of Contract)**

Counts 13 and 14 are based on the alleged loan the Debtor made to Kurtz in October 2009 in the amount of $60,153.31.  The complaint alleges Kurtz used the loan to pay a criminal restitution to the federal government.

Count 13 seeks the repayment of the debt under 11 U.S.C. §§ 542 and 550.  Section 542(b) provides that:

> Except as provided in subsection (c) or (d) of this section, an entity that owes a debt that is property of the estate and that is matured, payable on demand, or payable on order, shall pay such debt to, or on the order of, the trustee, except to the extent that such debt may be offset under section 553 of this title against a claim against the debtor.

Section 550(a) provides that:

> Except as otherwise provided in this section, to the extent that a transfer is avoided under section 544, 545, 547, 548, 549, 553(b), or 724(a) of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from –

> (1) The initial transferee of such transfer or the entity for whose benefit such transfer was made; or (2) any immediate or mediate transferee of such initial transferee.

11 U.S.C. §§ 542(b) and 550(a).

Count 14 seeks repayment of the loan on a breach of contract theory.  Under District of Columbia law, to state a claim for breach of contract, a plaintiff must allege "(1) a valid contract between the parties, (2) an obligation or duty arising out of the contract, (3) breach of that obligation or duty, and (4) damages caused by that breach."  *Haynes v. Navy Federal Credit Union*, 825 F.Supp.2d 285, 290 (D.D.C. 2011) (citing *Tsintolas Realty Co. v. Mendez*, 984 A.2d 181, 187 (D.C.2009)).

The complaint asserts that the Debtor made the loan to Kurtz and it has not been repaid. These allegations state a claim for relief.

Kurtz raises a number of factual defenses to the loan, including that the loan was not in writing and the government, not he, received the proceeds.  In essence he argues that, as a matter of fact, he is not obligated to repay the loan.  These factual allegations are not a proper response to a motion to dismiss and will be rejected here.

Kurtz also argues that the three-year statute of limitations has run on the loan.  However,

> "[o]rdinarily, a defense based on the statute of limitations must be raised by the defendants through an affirmative defense, *see* Fed. R. Civ. P. 8(c), and the burden of establishing the affirmative defense rests on the defendant.  It follows, therefore, that a motion to dismiss filed under Federal Rule of Civil Procedure 12(b)(6), which tests the sufficiency of the complaint, generally cannot reach the merits of an affirmative defense, such as the defense that the plaintiff's claim is time-barred. But in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6).  This principle only applies, however, if all facts necessary to the affirmative defense clearly appear[] on the face of the complaint."

*Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007) (internal quotations and citations omitted).

Here, the complaint is replete with allegations tending to show the close relationship between the Debtor and Kurtz and Kurtz's active participation in the affairs of the Debtor.  These

allegations raise the question of whether Kurtz is an insider.  A non-statutory insider "may be any person or entity whose relationship with the debtor is sufficiently close so as to subject the relationship to careful scrutiny."  *Butler v. David Shaw, Inc.*, 72 F.3d 437, 443 (4th Cir. 1996).  Insider status is determined by "a factual inquiry into the closeness of the relationship between the parties and whether the transaction between the transferee and debtor was conducted at 'arm's length.'"  *In re Three Flint Hill Ltd. Partnership*, 213 B.R. 292, 297-98 (D. Md. 1997) (finding that while control is certainly probative of an insider relationship, it is not required for finding insider status).

Whether Kurtz is an insider of the Debtor remains to be determined.  Moreover, the parties have not addressed whether a borrower's insider status has any affect on the statute of limitations defense to an action to collect the loan.  Accordingly, the application of the statute of limitations to the loan must await further proceedings.

Kurtz's motion to dismiss Counts 13 and 14 is denied.

**Count 15 (Declaratory Judgment and Constructive Trust)**

In Count 15, the Trustee seeks declaratory relief and the implementation of a constructive trust against Kurtz.  Specifically, the Trustee asks this court to declare the rights and ownership of the $60,153.31, which, as described in Counts 13 and 14, was allegedly loaned from the Debtor to Kurtz.  Count 15 is subsumed within Counts 13 and 14 and will be dismissed.

**Count 16 (Turnover under 11 U.S.C. § 542) and Count 17 (Declaratory Judgment and Constructive Trust)**

Count 16 seeks the turnover of property or funds against the Norrises under § 542.  Count 17 seeks declaratory relief and the implementation of a constructive trust against these defendants.  As stated above, after the complaint was filed, the Trustee obtained discovery in a separate adversary proceeding against the Norrises, Adv. Proc. 13-717, which may aid in

clarifying his assertion of claims against them.  Moreover, recently the court granted summary judgment in favor of the Norrises in Adv. Proc. 13-717 on the Trustee's contention that the Norrises' claims should be equitably subordinated.  Obviously, the parties have not addressed what, if any, effect the summary judgment in Adv. Proc. 13-717 may have on the Trustee's claims in this adversary proceeding.  Accordingly, the court will dismiss these Counts without prejudice and allow the Trustee to amend the complaint if appropriate.

**Count 18 (Violation of Maryland Code, Family Law § 4-301)**

Count 18 alleges that Melanie and the Living Trust violated Maryland Code, Family Law § 4-301.

Md. Code, Fam. Law § 4-301 provides, in relevant part, "[a] transfer of property between spouses is invalid if made in prejudice of the rights of present creditors."  Md. Code, Fam. Law § 4-301(d)(2)(i) (West 2009).  Additionally, the statute provides that "[a] claim under this paragraph shall be asserted within 3 years after the transfer or be barred absolutely."  *Id.* § 4-301(d)(2)(ii).

The Trustee alleges that the Debtor has transferred to Melanie and the Living Trust approximately $4.5 million, both pre – and post – petition, and that such property and money should be used to satisfy the Debtor's debts.  This money includes diverted funds from real estate closings.  Substantial deposits made to MRC, Melanie's company, include a deposit in the amount of $609,868.31 deposited ten days after the bankruptcy petition was filed.  The Trustee alleges that these transfers were made to an infirmed Melanie, and that they were made in prejudice of the rights of present creditors.

The Trustee has alleged sufficient facts to withstand a motion to dismiss.  Accordingly, Melanie's motion to dismiss Count 18 is denied.

**Count 19 (Accounting under 11 U.S.C. § 542); Count 20 (Injunction); Count 21 (Turnover under 11 U.S.C. § 542); and Count 22 (Receivership)**

These counts essentially seek remedies for the defendants' alleged wrongdoing. Whether these remedies can be asserted by the Trustee depends, in the first instance, on whether the Trustee has stated a claim for relief against the defendants. Accordingly, the resolution of these counts will await the resolution of the amended complaint.

## CONCLUSION

For the foregoing reasons, the motions to dismiss are granted in part and denied in part, and the court shall enter an order accordingly. The Trustee shall have twenty-one (21) days from the entry of the order to file a motion to compel the production of documents that are responsive to Rule 2004 or other requests that were outstanding on the date the complaint was filed. The Trustee shall have twenty-one (21) days after the motion to compel is resolved to file an amended complaint. If the Trustee does not file a motion to compel, the Trustee shall have twenty-one (21) days from the entry of the order resolving this motion to file an amended complaint.

cc:    All parties

## END OF MEMORANDUM OF DECISION