

**THOMAS J. CATLIOTA**
**U.S. BANKRUPTCY JUDGE**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MARYLAND
### at Greenbelt

| | | |
|---|---|---|
| In re: | * | Case No.   12-32701-TJC |
| Steven F. Madeoy | * | Chapter   7 |
| Debtor | * | |
| *   *   *   *   *   *   *   * | * | |
| Roger Schlossberg, Chapter 7 Trustee | * | |
| Plaintiff | * | |
| vs. | * | Adversary No.  14-00882 |
| Steven F. Madeoy, *et al.*, | * | |
| Defendants | * | |
| *   *   *   *   *   *   *   *   *   *   *   *   * | | |

### <u>MEMORANDUM OF DECISION</u>

Roger Schlossberg, the Chapter 7 Trustee (the "Trustee"), filed an Amended Complaint alleging that Steven F. Madeoy, the Chapter 7 debtor (the "Debtor"), his wife Melanie Madeoy, and business partners and associates conspired to defraud creditors and investors by transferring assets outside the reach of the Debtor's creditors and the bankruptcy estate.  ECF 520.  The Trustee alleges that the Debtor, with the assistance of his conspirators, planned the bankruptcy years in advance so that he could shield at least $4.5 million from creditors' claims, leaving little money in the bankruptcy estate to pay creditors.

1

This is the Trustee's second attempt to state claims against various defendants. On December 20, 2014, the Trustee commenced this adversary proceeding by filing a 104-page complaint asserting 22 counts against 53 defendants. The Defendants, along with other defendants named in the initial complaint, filed several motions to dismiss the initial complaint, which the court resolved in a Memorandum of Decision, ECF 347, *Roger Schlossberg, Chapter 7 Trustee v. Madeoy, et al. (Madeoy I)*, 2015 WL 4879960 (Bankr. D. Md. July 30, 2015).

In the Amended Complaint, ECF 520, the Trustee brings 13 counts against 10 defendants: the Debtor, Melanie Madeoy, George Christopher, as Trustee for the Melanie Cook Madeoy Living Trust (the "Trust"), David Scott Posey ("Posey"), Paul Kurtz ("Kurtz"), Amalgamated Holdings, Inc. ("AHI"), Girard LLC ("Girard") JTRS, Incorporated ("JTRS"), LWBR, LLC ("LWBR"), and MRC Investors, LLC ("MRC") (collectively, the "Defendants"). The Defendants have filed a motion to dismiss the Amended Complaint, which is now before the court. ECF 569. They contend that the Amended Complaint fails to state a claim and lacks the requisite particularity for pleading fraud. The crux of the Defendants' argument is that "[n]ot one paragraph alleges fraud at a particular time or place." ECF 569 at p. 12 of 41. The Defendants also argue that the summary of 65 emails attached to the Amended Complaint is conclusory, contains unsupported factual statements, and does not support the claims in the Amended Complaint.

The Defendants seek dismissal of the following claims: Count 1 (Civil Conspiracy); Count 2 (Fraudulent Transfer under 11 U.S.C. §§548 and 550); Count 3 (Fraudulent Conveyance under 11 U.S.C. §§544(b) and 550 and Md. Code Ann., Com. Law §§15-203, 15-205, 15-206, 15-207, and 15-208); Count 4 (Fraud); Count 5 (Alter Ego); Count 6 (Recovery of Avoided Transfers under 11 U.S.C. §550); Count 11 (Accounting); Count 12 (Injunction); and Count 13

(Turnover).  The Debtor also seeks dismissal of Count 7 (Concealment and/or Failure to Disclose).

For the reasons stated herein, the court will (1) grant the motion to dismiss Counts 1, 4, 7, 12 and 13; (2) deny the motion to dismiss Counts 2 and 3 as to Melanie Madeoy and Posey, to the extent of $67,567.34, and grant the motion as to all other defendants;  (3) deny the motion to dismiss Counts 5 and 11 as to the Debtor, Melanie Madeoy, Posey, MRC, AHI, Girard, JTRS, and LWBR and grant the motion as to all other defendants; and (4) deny the motion to dismiss Count 6 as to Melanie Madeoy, Posey, and the Trust and grant the motion as to all other defendants.

The court has jurisdiction over this matter pursuant to 28 U.S.C. §1334(b).  This proceeding raises core matters within the meaning of 28 U.S.C. §157(b)(2)(A), (E), (H), (K), and (O).  To the extent any matters are not core, the parties have consented to the court's authority to enter final orders.  *See* ECF 264, 276, 585, and 587.  Venue is proper pursuant to 28 U.S.C. §§1391, 1408, and 1409.

### Facts as Alleged in the Amended Complaint

The Debtor filed his Chapter 7 bankruptcy case on December 21, 2012 (Case No. 12-32701-TJC).  The Trustee was appointed to serve as the Chapter 7 Trustee.

The Debtor was involved in many businesses that acquired real estate for the purpose of leasing or reselling them for a profit.  Through the creation of many business entities, the Debtor led a fraudulent conspiracy to evade his creditors, reaping the profits of his business to the creditors and investors' detriment.  Even though the Debtor was not a named owner of the business entities, the Debtor was the de facto managing member.  He secretly caused broker or real estate commissions or profits from transactions to be paid to Melanie Madeoy, the Trust,

Posey, MRC, AHI, and Girard, without any consideration. ¶167.[1]  Those people and entities have been unjustly enriched.  ¶179.

The Debtor was assisted by the Defendants.  A primary conspirator in his scheme is the Debtor's wife, Melanie Madeoy.  She assisted by being the putative owner of holding companies that served the purpose of transferring assets out of the reach of creditors and the Trustee.  ¶4. Her ownership interest in any of the business entities is a sham.  In 2009, she became ill with a serious neurological ailment, and since then she has suffered from tremors, massive fatigue, and a diminished capacity to articulate her thoughts.  She has been physically incapacitated and has difficulty speaking.  The Debtor made business decisions for Melanie Madeoy and her entities. The decisions were not made at her specific behest nor did she provide any direct instructions.

A second defendant, Posey, assisted in the conspiracy by holding ownership of various entities, in name only, for the purpose of hiding the Debtor's assets from creditors.  ¶¶3, 75, 122, 206.  Posey is co-owner with the Debtor and Melanie Madeoy in 11 entities.[2]  He also holds an interest in TMS and Girard.  ¶130.  Posey has not made a capital investment in any of these business entities.  ¶130.  In exchange for an increased salary, interest in entities, and receipt of income from business investments, Posey created business entities and agreed to title them in his name.  In fact, these business entities were funded by the Debtor's assets.

The Trust is also another entity that received transferred assets that belonged to the Debtor.  ¶13.[3]  Kurtz, who is a long-time friend of the Debtor, provided advice to the Debtor before and after his bankruptcy filing.  ¶193.

---

[1] Unless otherwise noted, all references to paragraphs (¶) are to the Amended Complaint at ECF 520.

[2] (1) 1328 Madison Street LLC, (2) 417 18th St, NE, LLC, (3) 439 N. Frederick Avenue, L.L.C., (4) 608 Jefferson Street NW, LLC, (5) 724 Madison Street, N.W. LLC, (6) 725 Jefferson Street, N.W. LLC, (7) 7444 Georgia Ave., N.W. LLC, (8) 7709 Georgia Avenue LLC, (9) 9321 Georgia Avenue LLC, (10) Girard, LLC, (11) TMS Investments, LLC.  *See* ECF 520, Ex. A.

[3] Although the Amended Complaint states that George Christopher aided in the conspiracy, he is named as a defendant only as the trustee of the Trust.  George is the Debtor's and Melanie Madeoy's bookkeeper and accountant.  ¶¶1, 3.

The defendant entities, AHI, Girard, JTRS, LWBR, and MRC, are fraudulently conceived entities that acted as a shield to hold assets and to hinder, delay and defraud the Debtor's creditors and estate.

<u>The Debtor's ownership interest in TMS, Crosstown, and JTRS</u>

TMS was formed in August 2001 by the Debtor along with his business associates Michael Friedman ("Friedman") and Todd Norris ("Norris") so that they could purchase, own, improve, sell, lease, and manage real property in Washington D.C., Maryland, and Virginia. ¶127.  The Debtor was the resident agent.  ¶68.  He owns 30% of TMS, Friedman and Norris each own 30% interest in TMS, and Posey owns 10%.  *Id.*  TMS was registered and incorporated in Maryland and the District of Columbia.  *Id.*

TMS essentially owned and managed single asset real estate entities.  ¶130.  It did not take title in real property.  ¶133.  When a property was acquired, its title was held by a separate limited liability company.  ¶¶131, 133.  TMS managed and owned approximately 10 of these entities.  ¶¶37, 38, 39, 43, 44, 46, 47, 51, 52, 53, 54; ECF 520 at n.18.

In 2004, the Debtor became the managing member of TMS.  TMS was operated without regard to corporate formalities along with other entities owned by the Debtor and conspirators.  TMS's money and assets were commingled with other entities.  ¶133.  TMS received cash infusions from its members or third parties in the form of loans.  ¶129.  TMS did not always repay these loans.  ¶129.  Some of the investors, who were not repaid, have filed proof of claims in the Debtor's bankruptcy case.  ¶129.  The Debtor also encumbered real property in entities, in which he did not hold 100% interest.  ¶124.

Posey was active as an implementer.  ¶128.  He received 10% interest in TMS to conceal the true ownership of the Debtor.  ¶130.  He did not provide a capital investment.  ¶130.

When a TMS-related entity would sell real property, the Debtor would disburse monies at settlement to non-related TMS individuals or entities or to himself.  Those funds were then secretly transferred to Melanie Madeoy, her entities, and others to avoid detection by creditors. ¶138.

The Debtor dissipated and diverted funds from TMS and its related entities for his own personal benefit and for the benefit of his co-conspirators and to the detriment of creditors.  The fraudulent scheme included the following:

- In connection with the sale of 310 Hamilton Street, which was managed by TMS, ECF 520 at n. 16, the Debtor used over $100,000 to pay his personal accountant, Melanie Madeoy's personal accountant, non-legitimate business expenses, and took a management fee of $41,025.64 in the name of an entity called Crosstown Properties. ¶156.

- In connection with the sale of 301 Delafield Place, N.W., the Debtor fraudulently transferred $27,717.95 and $58,974.26 to himself, Melanie Madeoy, and MRC.  ¶¶157-160.

Another entity that managed the fraudulent scheme was Crosstown.  It was owned by the Debtor and Friedman, 50% each.  Like TMS, it did not hold title to real property, but collected rent and managed properties held by a limited liability companies and in turn those entities were owned by the Debtor, Posey, and other business associates.  Crosstown did not observe corporate formalities, and George Christopher asserted in an email on April 6, 2012, that its balance sheet was a "disaster".  ECF 565 at Email 15.

The Debtor employed a scheme of "rolling" or "jumping" investments and loans to avoid paying investors and creditors.  ¶146.  The Debtor "rolled" or "jumped" debts of TMS and

Crosstown entities. ¶146. Basically, when a piece of real property sold, the Debtor would not repay the loan or the investment, which was secured by the real property. ¶148. Instead, the Debtor caused that debt to be recorded as a debt owned by another entity; thus, it created a false debt for another entity. ¶149. These debts were concealed from investors and lenders on multiple occasions. ¶150.

In 2012, the Debtor stopped using TMS and Crosstown as management companies, and started using JTRS as a management company to perpetrate the fraudulent scheme. ¶¶115, 153. From then on, all commission and management fees were paid to JTRS and other co-conspirators. ¶¶152, 155, 156. JTRS was incorporated in Maryland in 1997. ¶24. The Debtor and Melanie Madeoy own JTRS as tenants by the entirety. ¶24.

The Debtor scheduled JTRS as having a value of $0 on the petition date, December 21, 2012. ¶115. However, between February 10, 2011, and December 18, 2012, there were payments made to JTRS from MRC totaling $13,741.79. ¶¶116, 165. Additionally, between December 28, 2012, and September 26, 2014, there were payments made to JTRS totaling $166,512.22. ¶¶117, 166. The Debtor made this transfer with the assistance of George Christopher, Posey, Kurtz, and Melanie Madeoy. ¶166. None of these payments were disclosed to the Trustee or turned over to the estate. ¶¶118, 165.

As the management company, JTRS paid employee wages. *See* ECF 565 at Email 22, 23, 36, 38, 64. Prior to February 4, 2013, employee wages had been paid from TMS accounts. *See* ECF 565 at Email 23. The Debtor and Posey were employees of JTRS, and they received income from JTRS. ¶118.

MRC

MRC was formed on October 15, 2010.  ¶22.  Posey is the resident agent.  ¶22.  The Debtor has stated that MRC is Melanie Madeoy's company.  ¶22.  Melanie Madeoy assigned 100% interest in MRC to the Living Trust for no consideration.  ¶¶22, 165.  Upon its formation, funds and assets were transferred from the Debtor to MRC.  ¶96.

In 2010, MRC had a net loss of $32,055.  ¶92.  In 2012, MRC declared net income of $1,021,869.  ¶105.  However, when questioned at a Fed. R. Bankr. P. 2004 examination, Melanie Madeoy could not provide information as to her sources of income, her business operations, or her expenses.  ¶105.  She stated that George Christopher, her accountant, could provide details and that the Debtor communicated with Christopher on her behalf.  ¶106.  The following deposits were traced to MRC's bank account:

- Deposits from third parties November 2, 2010, through December 21, 2012, totaling $480,580.95.  ¶107.

- Deposit from Apple Tree Holdings of $609,868 on December 31, 2012.  ¶¶107, 162

- Deposits from various individuals and entities, including Apple Tree Holdings and AHI from December 21, 2012, through March 21, 2013, totaling $763,706.47.  ¶107.

A sum of over $3 million was deposited into MRC's bank account from December 21, 2012, through November 14, 2014.  ¶¶108, 163.

MRC also made payments to JTRS totaling $166,512.22 from December 28, 2012, through September 26, 2014.  ¶117.  The Debtor transferred his money to Melanie Madeoy with the assistance of George Christopher into MRC.  ¶166.  Then MRC made the payment to JTRS, which provided profits to the Debtor.  ¶166.  Melanie, Posey, Kurtz and George Christopher assisted with this scheme.  ¶166.

Posey received many payments for his assistance in the scheme.  He received at least $67,567.34.  ¶168.

AHI

AHI was formed on January 28, 2013.  ¶21.  Melanie Madeoy owns 100% interest in AHI.  She transferred all of her ownership in AHI to the Trust.  ¶21.  AHI also owns 100% interest in MRC.  ¶22.

AHI also owns 50% in another entity Girard, which was formed on April 4, 2012.  From January 30, 2013, to November 18, 2014, AHI's bank accounts reflect deposits totaling $1,270,766.74.  ¶¶109, 169.  The deposits included $50,000 from Melanie Madeoy, $10,000 from Bobi Gibson, and $1,003,234.36 from MRC.  ¶169.  The Debtor transferred the money directly or indirectly into the bank account.  ¶110.  This money was enjoyed by the Debtor without it being subjected to creditor's or the estate's claims.  ¶169.

The Trust

The Trust was created on January 4, 2013, to receive assets for the benefit of Melanie Madeoy during her lifetime, and then to distribute those assets after her death.  ¶18.  Melanie Madeoy is the settlor, and George Christopher is the trustee.  ¶18.  It has taken interest in entities that were previously owned by the Debtor.  ¶18.  The Trust was fraudulently conceived to hinder and delay the Debtor's creditors.

On February 11, 2013, AHI, MRC, Girard, Seton, LLC, JTRS, and Minnesota Corner, LLC ("Minnesota")[4] were transferred to the Trust.  ¶19.  Prior to this transfer, as stated above, Melanie Madeoy had a 100% already in MRC and AHI.  ¶¶21 and 22.  Girard was formed on April 4, 2012, and Posey and AHI hold 50% membership interest.  Melanie assigned her interest to the Trust.  JTRS was formed on November 26, 1997, and the Debtor and Melanie own 100%

---

[4] Norris gave a 50% interest in Minnesota to Melanie Madeoy.  ¶192.

interest as tenants by the entirety.  Minnesota was formed on August 26, 2011, and AHI and Norris each own a 50% interest.  Melanie assigned her membership interest to the Trust.  ¶34.

Appletree Funding

The Debtor, Posey, and William F. Chesley had an active business relationship about three years before the bankruptcy.  They bid on loan packages and properties across the country.  Chesley owned a company known as Appletree Funding.  Melanie Madeoy was not involved in this business enterprise.  Posey was actively involved, but he did not have an ownership interest.  ¶¶77, 82.

The Debtor eliminated his ownership interest, on paper, around the time of the bankruptcy.  He transferred ownership interests to Melanie Madeoy and Posey.  However, the Debtor directed the deals while Posey continued to work on "flipping" properties.  Email communication show that Melanie was not directly involved, and that only her name and her entities names were being used to create a façade that she owned the business enterprise.  *See* ¶82.  Posey, Kurtz, and George Christopher acted as agents for Melanie.

Tax records

The Debtor's tax returns show the effect of transfers to Melanie Madeoy.  Specifically, between 2009 and 2013, tax records and limited bank records show "transfers of over $4.5 million to businesses owned or organized shortly before and after the bankruptcy in the name of Melanie."  ¶85.  The facts regarding the taxes have been summarized in *Madeoy I*, 2015 WL 4879960 at *3-5.

<u>Bank records</u>

The bank records of MRC, JTRS, and AHI from 2010 to 2014 show that money was funneled to these entities without observing corporate formalities for the purpose of evading the Debtor's creditors.  A summary of these facts are also in *Madeoy I*, 2015 WL 4879960 at *3-5.

## Conclusions of Law

The Defendants move to dismiss the complaint under Fed. R. Civ. P. 12(b)(6) and 9(b), applicable here by Fed. R. Bankr. P. 7012 and 7009.

### *Fed. R. Civ. P. 12(b)(6)*

"[T]he purpose of Rule 12(b)(6) is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of the claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999) (internal quotation marks and alterations omitted). The court must "accept the well-pled allegations of the complaint as true," and "construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff." *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997).

To survive a motion to dismiss, a complaint must "contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 667 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "The mere recital of elements of a cause of action, supported only by conclusory statements, is not sufficient to survive a motion made pursuant to Rule 12(b)(6)."  *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citing *Iqbal,* 556 U.S. at 678).  The complaint must also state a "plausible claim for relief" and that determination by the court is a "context-specific task." *Walters,* 684 F.3d at 439 (citing *Iqbal,* 556 U.S. at 680-681 (plaintiffs bear the burden of

establishing that a claim is not only conceivable, but also plausible)).  "Ultimately, factual

allegations must . . . raise a right to relief above the speculative level, and the complaint must

offer enough fact to raise a reasonable expectation that discovery will reveal evidence of the

alleged activity."  *US Airline Pilots Ass'n v. Awappa, LLC*, 615 F.3d 312, 317 (4th Cir. 2010)

(quoting *Twombly*, 550 U.S. at 555) (internal quotation marks omitted).

### Fed. R. Civ. P. 9(b)

The Amended Complaint asserts claims based on fraud.  Fraud claims are subject to a

heightened pleading standard.  Fed. R. Civ. P. 9(b) provides:

> In alleging fraud or mistake, a party must state with particularity the
> circumstances constituting fraud or mistake.  Malice intent, knowledge, and other
> conditions of a person's mind may be alleged generally.

Fed. R. Civ. P. 9(b).

> It has been said by innumerable federal courts that the requirement in Rule 9(b) is
> necessary to safeguard potential defendants from lightly made claims charging the
> commission of acts that involve some degree of moral turpitude. The notion is
> that a heightened pleading requirement imparts a note of seriousness and
> encourages a greater degree of pre-institution investigation by the plaintiff.
> *****
> Second, some federal courts have expressed the view that allegations of fraud or
> mistake frequently are advanced only for their nuisance or settlement value and
> with little hope that they will be successful on the merits; indeed, there actually
> may be little or no incentive to secure the adjudication of the claim in some
> instances.

5A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure*  §1296 (3d ed.

2017).

In the Fourth Circuit, a complaint must identify with particularity "the time, place, and

contents of the false representations, as well as the identity of the person making the

misrepresentation and what he obtained thereby."  *Harrison v. Westinghouse Savannah River

Co.*, 176 F.3d 776, 784 (4th Cir. 1999) (quoting *id.*).  "Mere allegations of 'fraud by hindsight'

will not satisfy the requirements of Rule 9(b)." *Hillson Partners Ltd. Partnership v. Adage, Inc*., 42 F.3d 204, 209 (4th Cir. 1994).  A court, however, "should hesitate to dismiss a complaint under Rule 9(b) if the court is satisfied (1) that the defendant has been made aware of the particular circumstances for which she will have to prepare a defense at trial, and (2) that plaintiff has substantial pre-discovery evidence of those facts." *Harrison*, 176 F.3d at 784.

As pertinent here, when the complaint alleges claims against many defendants, Rule 9(b) requires that all claims must be pled with particularity to each defendant.  *Dealers Supply Co., Inc. v. Cheil Industries, Inc.*, 348 F. Supp. 2d 579, 589-90 (M.D.N.C. 2004) (citing *Adams v. NVR Homes, Inc.,* 193 F.R.D. 243, 251 (D. Md. 2000).  "The identity of the person making the misrepresentation is particularly important where there are multiple defendants."  *Id.* at 590.  Courts have rejected claims in which multiple defendants are "lumped together" and in which "no defendant can determine from the complaint which of the alleged representations it is specifically charged with having made, nor the identity of the individual by whom and whom the statements were given."  *Id.* (quoting *McKee v. Pope Ballard Shepard & Fowle, Ltd.*, 604 F. Supp. 927, 931 (N.D. Ill. 1985)).

The court will address each count in turn.

Count 1 (Civil Conspiracy to Commit Fraud)

In Count 1, the Trustee asserts a claim for conspiracy against all Defendants.  The Amended Complaint asserts:

> 208. More specifically, these Count I Defendants agreed or understood that they would act in confederation to commit a fraud upon the creditors of the bankruptcy estate of Steven Madeoy by assisting in or causing the improper transfer of money, property, entities, and membership interests that are property of the estate. In addition, they acted to conceal and not disclose assets so as to hinder, delay, defraud creditors and the Plaintiff.

> 209. Count I Defendants agreed or understood that they would act in confederation to commit a fraud upon the creditors of the bankruptcy estate of Steven Madeoy by

13

> unlawfully funneling monies out of accounts and entities that should have become property of the estate, by unlawfully hiding and concealing assets of the estate, and by unlawfully using assets of the estate of their own benefit.

¶¶ 208, 209.

Under Maryland law, civil conspiracy is the "combination of two or more persons by an agreement or understanding to accomplish an unlawful act or to use unlawful means to accomplish an act not in itself illegal, with the further requirement that the act or the means employed must result in damages to the plaintiff." *Marshall v. James B. Nutter & Co.*, 758 F.3d 537, 541 (4th Cir. 2014) (quoting *Hoffman v. Stamper,* 867 A.2d 276, 290 (Md. 2005)). Beyond proving an agreement exists, "the plaintiff must also prove the commission of an overt act, in furtherance of the agreement, that caused the plaintiff to suffer actual injury." *Id.* "[C]onspiracy is not a separate tort capable of independently sustaining an award of damages in the absence of other tortious injury to the plaintiff." *Marshall*, 758 F.3d at 541 (quoting *Alleco Inc. v. Harry & Jeanette Weinberg Found., Inc.,* 665 A.2d 1038, 1045 (Md. 1995)).

The court must first determine what is the underlying tort alleged by the Trustee that supports the conspiracy claim. The Trustee asserts that the Defendants engaged in a conspiracy to commit fraudulent transfers: The Defendants "assist[ed] or caus[ed] the improper transfer of money, property, entities, and membership interests that are property of the estate." ¶208. It also alleges that the Defendants "unlawfully funnel[led] monies out of accounts and entities that should have become property of the estate, by unlawfully hiding and concealing assets of the estate." ¶209.

Numerous courts have held that a plaintiff may not recover damages for a conspiracy to commit a fraudulent transfer. *Indus. Enters. of Am., Inc. v. Mazzuto (In re Pitt Penn Holding Co.)*, 484 B.R. 25, 48 (Bankr. D. Del. 2012) ("Bankruptcy courts do not recognize claims for damages for conspiracy to commit a fraudulent transfer."); *Hyundai Translead, Inc. ex rel.*

14

*Estate of Trailer Source, Inc. v. Jackson Truck & Trailer Repair Inc.*, 419 B.R. 749, 761 (M.D.

Tenn. 2009) ("[T]he authorities are [] clear that there is no such thing as liability for aiding and

abetting a fraudulent conveyance or conspiracy to commit a fraudulent transfer as a matter of

federal law under the Code.") (quoting *Official Comm. of Unsecured Creditors of Fedders N.*

*Am., Inc. v. Goldman Sachs Credit Partners L.P. (In re Fedders N. Am., Inc.)*, 405 B.R. 527, 549

(Bankr. D. Del. 2009)).  A trustee's recourse for a fraudulent transfer is limited to remedies

provided in 11 U.S.C. §550,[5] "and that provision only allows the trustee to recover up to the

amount of the transfer from a transferee, or a party for whose benefit the transfer was made."  *In*

*re Fedders N. Am., Inc.*, 405 B.R. at 548 (citing *Sherman v. FSC Realty LLC (In re Brentwood-*

*Lexford Partners, LLC)*, 292 B.R. 255, 275 (Bankr. N.D. Tex. 2003)); *see also Schlossberg v.*

*Abell (In re Abell)*, 549 B.R. 631, 667 (Bankr. D. Md. 2016) ("Numerous courts have held that

the bankruptcy court cannot invoke state law remedies to circumvent or undermine the remedy

legislated by Congress for the avoidance of a fraudulent transfer . . . .  [T]he trustee's remedy for

an avoided transfer [is] provided for in § 550, and that provision only allows a trustee to recover

up to the amount of the transfer.") (citations omitted).  Allowing a trustee to recover more than

the amount of the transfer would "lead to a result that expands the remedies [for a fraudulent

transfer] beyond §550."  *In re Brentwood-Lexford Partners, LLC*, 292 B.R. at 275.

The conclusion that a trustee may not bring a claim for conspiracy to commit a fraudulent

transfer is also supported by Maryland conspiracy law, at least where the alleged conspirators are

not in the chain of title. "[A] defendant may not be adjudged liable for civil conspiracy unless

that defendant was legally capable of committing the underlying tort alleged."  *Marshall*, 758

F.3d at 541 (quoting *Shenker v. Laureate Educ., Inc.*, 983 A.2d 408, 428 (Md. 2009)).  "Thus,

---

[5] Unless otherwise noted, all statutory references are to the Bankruptcy Code, 11 U.S.C. §101 *et seq.*, as currently in effect.

civil conspiracy requires an agreement, and an overt act in furtherance of the agreed-to unlawful conduct that causes injury, as well as the legal capacity of the conspirators to complete the unlawful conduct." *Marshall*, 758 F.3d at 541. If the participant cannot be held liable for the underlying tort, then the participant cannot be held liable for the conspiracy to commit the underlying tort. *BEP, Inc. v. Atkinson*, 174 F. Supp. 2d 400, 409 (D. Md. 2001). Thus, a conspirator could only be capable of committing a fraudulent transfer if he or she were a transferor or transferee. To hold otherwise would be to impose liability on parties not "legally capable of committing the underlying tort." *Marshall*, 758 F.3d at 541-42. For this reason, Maryland law would not recognize a conspiracy claim against any defendant for whom a claim of fraudulent transfer could not be made.

Accordingly, the Trustee can recover under §550 from those defendants against whom he has stated a fraudulent transfer claim and no other defendant is legally capable of committing a fraudulent transfer. The court will dismiss Count 1 to the extent it seeks to bring a claim for conspiracy to commit a fraudulent transfer.

The second underlying tort asserted by the Trustee in support of a conspiracy claim is fraud. The Trustee brings a fraudulent misrepresentation claim against all Defendants in Count 4. As stated below in the discussion of the motion to dismiss Count 4, the Trustee fails to state a claim under Count 4. The finding of a civil conspiracy presupposes the underlying tort was committed. *See Marshall*, 758 F.3d at 541; *see also Alexander & Alexander Inc. v. B. Dixon Evander & Assocs., Inc.*, 650 A.2d 260, 265 (Md. 1994) ("[I]t is a general rule, that a conspiracy cannot be made the subject of a civil action, unless something is done which, without the conspiracy, would give a right of action.") (quoting *Robertson v. Parks,* 24 A. 411, 413 (1892)). Therefore, Count 4 cannot support a claim of conspiracy.

For the foregoing reasons, the court will dismiss Count 1.  In doing so, the court recognizes that in *Madeoy I*, it denied the motion to dismiss the conspiracy count against Melanie Madeoy and Kurtz, although it grants it here.  A court "has the inherent power to reconsider and modify an interlocutory order at any time prior to the entry of judgment.  An order denying a motion to dismiss a complaint under Rule 9(b) is interlocutory in this sense." *Murr Plumbing v. Scherer Bros. Fin. Servs. Co.*, 48 F.3d 1066, 1070 (8th Cir. 1995) (citation omitted).  After issuing *Madeoy I*, the court issued *In re Abell,* in which it determined that a plaintiff cannot seek damages for a civil conspiracy to commit a fraudulent transfer.  *In re Abell,* 549 B.R. at 665-668.  The Trustee here was the plaintiff in *In re Abell.*

Count 2 (Fraudulent Transfers under 11 U.S.C. §§548 and 550)

Count 2 seeks to avoid pre-petition transfers made to the Defendants under §§548 and 550.  The Trustee asserts that within two years of the petition date, the Debtor's assets and membership interests were transferred to various defendants with an actual intent to hinder, delay, or defraud creditors.

In *Madeoy I*, the court set forth the elements of a fraudulent transfer.  2015 WL 4879960 at *9-10.  Basically, under §548(a)(1)(A), the trustee may avoid a transfer made within two years of the petition date "with actual intent to hinder, delay, or defraud" creditors.  §548(a)(1)(B).  Under §548(a)(1)(B), the transfer may be avoided if the debtor received less than reasonably equivalent value and, among other things, was insolvent or rendered insolvent by the transfer or was left with unreasonably small capital to conduct its business.  §548(a)(1)(A).  A claim under §548(a)(1)(A) must satisfy the pleading requirement of Rule 9(b), but a claim under §548(a)(1)(B) "is based on the transferor's financial condition and the sufficiency of the consideration provided by the transferee, rather than fraud . . . ."  *In re Derivium Capital, LLC,*

380 B.R. 429, 439 (Bankr. D.S.C. 2006). Thus, a §548(a)(1)(B) claim only needs to satisfy general pleading rules to survive a motion to dismiss. A trustee may recover the value of that which was transferred for the benefit of the estate. §550.

In *Madeoy I,* the court determined the Trustee stated a claim for fraudulent transfer against Melanie Madeoy and will not revisit that issue here. As to the remaining defendants, the Amended Complaint identifies many transfers between the Defendants, many of which appear innocuous on their face because they are alleged to have been made for services rendered on debts due. For many such transfers, the Amended Complaint contains no or insufficient grounds for asserting that a particular transfer was fraudulent. And, except for the modest transfers specifically identified in Count 2 against defendants other than Melanie, any defendant would be unable to review the Amended Complaint and determine which of the other transfers are alleged to be fraudulent as to him or it. Yet, the Trustee seeks the imposition of $10 million of punitive damages against all Defendants for Count 2, ¶229e, suggesting he is asserting fraudulent transfer claims based on the broader allegations in the Amended Complaint, rather than the relatively few transfers identified in Count 2. The court previously allowed the Trustee to amend the complaint and assert his fraudulent transfer claims with particularity. Therefore, the court will limit its review to whether the specific transfers set forth in Count 2 state a claim for fraudulent transfer, concluding that merely identifying other transfers throughout the Amended Complaint is insufficient to state a claim for fraudulent transfer.

The Trustee alleges that $58,974.26 was transferred as a fee upon the closing of 301 Delafield Place, N.W. ¶229a. The Amended Complaint alleges this amount was taken by the Debtor as a fee for Crosstown and the funds were then transferred to Melanie Madeoy. ¶160.

This allegation does not state a claim for fraudulent transfer against any defendant other than Melanie.

The Trustee alleges that $13,741.79 was transferred to JTRS prepetition from MRC. ¶229b. These amounts were paid from February 10, 2011, through December 18, 2012. ¶116. According to the Amended Complaint, JTRS is owned by the Debtor and Melanie Madeoy as tenants by the entirety. The Amended Complaint simply states that "transfers to the benefit of JTRS were reflected." ¶115. It does not say from whom the transfers were made or why a transfer to an entity owned by the Debtor and Melanie is a fraudulent transfer against any defendant, other than perhaps Melanie.

The Trustee alleges that $57,251.56 was transferred to Posey, directly or indirectly by MRC. ¶229d. The Amended Complaint alleges that:

> Posey also received numerous large payments from MRC for his assistance in completing the fraudulent transfers. Posey received at least $67,567.34 from MRC. This amount was paid to Posey through MRC on behalf of Steven, and as such was made with intent to hinder, delay or defraud creditors. By paying Posey through MRC, Steven could ensure that his friend and longtime employee was paid without it appearing as easily, avoidable as a preference, or fraudulent transfer in Steven's bankruptcy case.

¶168. The discrepancy between the $57,251.56 and $67,567.34 is not explained. In any event, by alleging that the funds paid to Posey were on behalf of the Debtor, the foregoing states a claim for fraudulent transfer against Posey up to $67,567.34.

Accordingly, the court will dismiss Count 2 against all defendants except for Melanie Madeoy and the claim against Posey for up to $67,567.34.

Count 3 (Fraudulent Conveyance under 11 U.S.C. §550; Md. Code Ann., Com. Law §§15-203, 15-205, 15-206, 15-207, and 15-208)

Count 3 seeks to avoid transfers under the Maryland Uniform Fraudulent Conveyance Act ("MUFCA") §15-201, *et seq.*, against the Defendants. Under MUFCA, the Trustee may

19

avoid transfers that occurred up to three years before the date of the petition, unlike §548 which limits recovery to those transfers that occurred within the two-year look back period.  The allegations in this count are identical to those in Count 2 and therefore the same rationale applies. The court will dismiss Count 3 against all defendants except for Melanie Madeoy and the claim against Posey for up to $67,567.34.

Count 4 (Fraud)

Count 4 asserts a claim for fraudulent misrepresentation against all the Defendants.

Count 4 alleges the Defendants:

> knowingly falsely representing the basis for, timing of, and participants in and to transfers of money and property, and by knowingly and intentionally misrepresenting the legitimacy of encumbrances on properties allegedly securing loans.

¶243.

> Under Maryland law, the elements of fraud are:
>
> (1) That the defendant made a false representation to the plaintiff, (2) that its falsity was either known to the defendant or that the representation was made with reckless indifference as to its truth, (3) that the misrepresentation was made for the purpose of defrauding the plaintiff, (4) that the plaintiff relied on the misrepresentation and had the right to rely on it, and (5) that the plaintiff suffered compensable injury resulting from the misrepresentation.

*Alleco Inc.,* 665 A.2d at 1047.  Each element must be proven to state a claim for fraud.

> Count 4 states that:
>
> These Count IV Defendants made misrepresentations, including false statements, in bankruptcy filings, recorded documents, settlement statements, and operating agreements for the purpose of defrauding creditors of Steven's. In addition, the Count IV Defendants aided and abetted the fraud.  Other actions in aiding and abetting involved the Defendants advice, assistance, and coordination of financial transactions involving Steven, Melanie, the Living Trust, MRC, AHI, JTRS, LWBR, Girard, Kurtz and Posey. Emails and background facts cited above are incorporated by reference as further evidence of the Defendants' participation.

¶244.  This count does not meet the specificity and particularity requirement of Rule 9(b).  *See Harrison,* 176 F.3d at 784 (complaint must identify "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation"); *Dealers Supply,* 348 F.Supp. 2d at 589-90 ("The identity of the person making the misrepresentation is particularly important when there are multiple defendants[,]" and defendants should not be lumped together).  Count 4 generically states that the Defendants made misrepresentations in a variety of documents.  Other than statements attributable to the Debtor, no single specific misrepresentation is identified.  Count 4 lumps all the defendants together and neither the court nor the Defendants can identify which Defendant made what misrepresentation.  It does not identify what was obtained by a defendant as a result of a false statement.  The Amended Complaint does not identify a single creditor who relied on a misrepresentation to its detriment and that was made by anyone other than the Debtor.  Lastly, there is nothing in Count 4 or in the Amended Complaint that explains how each defendant could be held personally liable for up to $4,500,000.

The court allowed the Trustee to amend the complaint to assert his fraud claims with particularity.  The Amended Complaint does not do so.  Accordingly, Count 4 will be dismissed.

Count 5 (Alter Ego)

Count 5 asserts that all the individual defendants should be held personally liable and that corporate defendants should be held jointly and severally liable for the liabilities of the Debtor. The Trustee contends that the separate corporate existence of the Trust, MRC, AHI, Girard, JTRS, and LWBR is a fiction.

In Maryland, corporate "shareholders generally are not held individually liable for debts or obligations of a corporation except where it is necessary to prevent fraud or enforce a

paramount equity." *Bart Arconti & Sons, Inc. v. Ames-Ennis, Inc.*, 340 A.2d 225, 234 (Md. 1975) (citing *Damazo v. Wahby,* 270 A. 2d 814 (Md. 1970)).  However, in the appropriate circumstances, courts will "disregard the corporate entity and deal with substance rather than form, as though a corporation did not exist." *Id.*  There are three circumstances by which a corporate entity may be disregarded:

> *First*.  Where the corporation is used *as a mere shield for the perpetration of a fraud*, the courts will disregard the fiction of separate corporate entity.

> *Second*.  The courts may consider a corporation as unencumbered by the fiction of corporate entity and deal with substance rather than form as though the corporation did not exist, *in order to prevent evasion of legal obligations*.

> *Third*.  Where the stockholders themselves, or a parent corporation owning the stock of a subsidiary corporation, *fail to observe the corporate entity, operating the business or dealing with the corporation's property as if it were their own*, the courts will also disregard the corporate entity for the protection of third persons.

*Hildreth v. Tidewater Equip. Co.*, 838 A.2d 1204, 1210 (Md. 2003) (quoting Herbert M. Brune, Jr., Maryland Corporation Law and Practice, § 371 at 384 (revised ed. 1953)) (internal quotation marks omitted; emphasis in original).

The third of these circumstances is commonly referred to as the "alter ego" doctrine. *Rosen v. Kore Holdings, Inc. (In re Rood)*, 448 B.R. 149, 159 (D. Md. 2011) (citing *Hildreth*, 838 A.2d at 1210.  This doctrine is applied " 'with great caution and reluctance' and only in 'exceptional circumstances.'" *Id.*  Application of the alter ego doctrine is appropriate where there is a showing of:

> (1) complete domination, not only of the finances, but of policy and business practice in respect to the transaction so that the corporate entity as to this transaction had at the time no separate mind, will or existence of its own[;]
> (2) that such control [was] used by the defendant to commit fraud or wrong, to perpetrate the violation of the statutory or other positive legal duty, or dishonest and unjust act in contravention of the plaintiff's legal rights[;] and
> (3) that such control and breach of duty proximately caused the injury or unjust loss.

*Id.* (internal quotations omitted).  Although there is "no universal rule as to the specific criteria that courts will consider in determining whether to apply the doctrine, . . . some of the factors commonly considered" are:

> (1) whether the corporation is inadequately capitalized, fails to observe corporate formalities, fails to issue stock or pay dividends, or operates without a profit[;]
> (2) whether there is commingling of corporate and personal assets[;]
> (3) whether there are non-functioning officers or directors[;]
> (4) whether the corporation is insolvent at the time of the transaction[;] and
> (5) the absence of corporate records.

*Id.* (citations omitted).

The evaluation of alter ego liability is a fact-specific inquiry generally left to summary judgment.  *RaceRedi Motorsports, LLC v. Dart Mach., LTD.*, 640 F. Supp. 2d 660, 670 (D. Md. 2009) (citing *In re American Honda Motor Co., Inc. Dealerships Relations Litigation*, 941 F.Supp. 528, 551 (D. Md. 1996)).  Maryland courts, "nonetheless, have dismissed alter ego claims under Rule 12(b)(6)."  *Id.*

The Defendants argue that dismissal of the alter ego claim is warranted because, in Maryland, courts will not disregard the corporate entity absent a finding of fraud or to enforce a paramount equity.  The Defendants also argue that the Trustee has failed to allege that the Defendants exercised complete domination over the entities so that the corporate defendants had no separate mind, will, or existence of their own.

The Amended Complaint, however, asserts that the Debtor concocted a scheme whereby he created sham entities under the names of Melanie Madeoy and Posey to shield his assets from the reach of creditors.  It alleges that in each instance the entities were undercapitalized, corporate formalities were ignored, business and personal assets were comingled, the entities were insolvent at the time of the transfers, and corporate records were not kept.  Moreover, the

Amended Complaint asserts that Melanie's and Posey's involvement in these entities was fabricated, making it appear that the Debtor no longer had ownership of the assets, when in actuality he continued to orchestrate all of the dealings of the companies and retained beneficial ownership. These allegations are sufficient to state a claim against Melanie and Posey and against the corporate defendants of MRC, AHI, Girard, JTRS, and LWBR.

The Amended Complaint does not contain sufficient allegations to state an alter ego claim against the Trust. It was formed post-petition and the Amended Complaint asserts it is under the control of its trustee, George Christopher. The Amended Complaint also does not state an alter ego claim against Kurtz, even though he is named in Count 5.

Thus, Count 5 will not be dismissed as to the Debtor, Melanie Madeoy, Posey, MRC, AHI, Girard, JTRS, and LWBR, but will be dismissed against Kurtz and the Trust.

Count 6 (Recovery of Fraudulent Transfers under §550)

Count 6 asserts that the Defendants received transfers as described in previous counts and that those transfers should be avoided and the value of those assets should be returned to the Trustee. Section 550 provides:

> (a) Except as otherwise provided in this section, to the extent that a transfer is avoided under section 544, 545, 547, 548, 549, 553(b), or 724(a) of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from—
> (1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or
> (2) any immediate or mediate transferee of such initial transferee.
>
> (b) The trustee may not recover under section (a)(2) of this section from—
> (1) a transferee that takes for value, including satisfaction or securing of a present or antecedent debt, in good faith,
> and without knowledge of the voidability of the transfer avoided; or
> (2) any immediate or mediate good faith transferee of such transferee.

§550(a) and (b).  The §550 claims follow any valid claims under §548.  The court has

determined that the Trustee has stated a claim for fraudulent transfer against Madeoy and Posey.

Further, the Amended Complaint alleges that the Trust was formed post-petition on January 4,

2013, and Melanie is the settlor.  ¶18.  The Amended Complaint alleges that, among the assets

transferred to the Trust were the assets that had been fraudulently transferred to Melanie.  It

further alleges that the Trust provided no value for the assets.  Therefore, the Amended

Complaint asserts a claim under §550(b) against the Trust.

The court will deny the motion to dismiss Count 6 as to Melanie Madeoy, Posey and the

Trust, and grant the motion as to all other defendants.

Count 7 (Concealment and/or Failure to Disclose)

In Count 7, the Trustee alleges that the Debtor "concealed a significant amount of

information concerning assets of the Estate, and the Trustee and the Debtor's bankruptcy estate have

suffered significant damages as a result of these concealments."  ¶274.  The Amended Complaint

states that the Debtor had a duty to accurately disclose material financial information to the Trustee,

and intentionally failed to do so.  It alleges the Trustee justifiably relied on the Debtor's false

representations to the detriment of the estate and its creditors.

The Trustee cites no authority for the position that he can seek monetary relief for a debtor's

failure to accurately disclose information in his bankruptcy schedules or to a bankruptcy trustee.  Of

course, a debtor's failure to disclose can provide a basis for denying the discharge under §727.  But

there is no general cause of action by a Chapter 7 trustee against a debtor for failing to accurately

disclose financial information during the bankruptcy case.  Accordingly, Count 7 will be dismissed.

Count 11 (Accounting)

The common law claim of accounting is available only when remedies at law are

inadequate.  *Goldhammer v. Hayes,* 2209 WL 1609044, *5 (D. Md. 2009).  It is an equitable

25

action.  *Shah v. Healthplus, Inc.*, 696 A.2d 473, 476 (Md. Ct. Spec. App. 1997).  "An accounting

may be had where one party is under an obligation to pay money to another based upon facts and

records which are known and kept exclusively by the party to whom the obligation is owed, or

where there is a confidential or fiduciary relation between the parties, and a duty rests upon the

defendant to render an account."  *P.V. Props. Inc. v. Rock Creek Village Assocs. Ltd. P'ship*, 549

A.2d 403, 409 (Md. Ct. Spec. App. 1988), *quoted in Polek v. J.P. Morgan Chase Bank, N.A.*, 549

A.2d 403, 409 (Md. Ct. Spec. App. 2012)).

> P.V. Props. provides an example under Maryland law of when a freestanding
> claim for accounting is appropriate. In that case, a commercial tenant in a
> shopping center sought an itemized listing of common area maintenance expenses
> where the lease [was] silent in that respect and the landlord [was] unwilling to
> provide the desired information. The Maryland Court of Special Appeals
> explained the "general rule" that a suit in equity for an accounting may be
> maintained when the remedies at law are inadequate, and said: An accounting
> may be had . . . where there is a confidential or fiduciary relation between the
> parties, and a duty rests upon the defendant to render an account.
> *****
> In contrast, however, courts have rejected claims for accounting:
> where the plaintiff was fully capable of ascertaining, through its own efforts, the
> information it sought from the defendant by way of an accounting[;] where
> discovery was otherwise available[;] or where there was no basis for inferring that
> [the defendant] was in any sort of confidential relationship with or bore any
> fiduciary duty toward [the plaintiff].

*Fenzel v. Group 2 Software, LLC*, 2016 WL 265363, *15 (D. Md. March 7, 2016) (internal

quotation marks and citations omitted).

As discussed above, the court has determined the Amended Complaint asserts a plausible

claim for alter ego liability against Melanie Madeoy, Posey, MRC, AHI, Girard, JTRS, and

LWBR.  Due to the nature of the alleged scheme, it may well be that the remedies available to

the Trustee are inadequate to determine the scope and extent of any losses, should he prove his

case.  The court also takes into account the long and tortuous dispute between the parties over the

26

Trustee's Bankruptcy Rule 2004 investigations and requests.  *See Madeoy I*, 2015 WL 4879960 at *6-8.  Lastly, because these entities may be considered alter egos of the Debtor, a "confidential or fiduciary relation between the parties" may exist and thus "a duty rests upon the defendant to render an account."  *P.V. Props. Inc.*, 549 A.2d at 409.  For this reason, the court will deny the motion to dismiss Count 11 as to the parties against whom the Trustee has stated a claim for alter ego, and will dismiss Count 11 as to Kurtz and the Trust.

Count 12 (Injunction)

Count 12 asserts a claim for an injunction against the Defendants.  The Amended Complaint seeks an order:

> d. permanently enjoining all Defendants from destroying, concealing, transferring or otherwise diminishing in value assets of the Debtor's bankruptcy estate or records related to their accounts, assets and transactions from December 1, 2009 to the current date;
> e.  permanently enjoining all Defendants from transferring any property; and
> f.  maintaining the status quo pending resolution of this case; and
> g. for such other and further relief as the Court may deem appropriate under the circumstances.

¶320d-g.  The Trustee has not filed a motion seeking temporary or permanent relief.  The relief the Trustee seeks is a permanent injunction, which would only be available, if at all, after adjudication of liability and a showing of likelihood or continuing dissipation of assets.  The court will dismiss Count 12 without prejudice upon a proper showing at the applicable time.

Count 13 (Turnover)

Count 13 asserts a claim for turnover under §542(a), which provides in pertinent part:

> Except as provided in subsection (c) or (d) of this section, an entity, other than a custodian, in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease under section 363 of this title, or that the debtor may exempt under section 522 of this title, shall deliver to the trustee, and account for,

such property or the value of such property, unless such property is of inconsequential value or benefit to the estate.

§542(a).  To prove a claim under §542(a), a trustee must prove that "(1) the property is in the possession, custody or control of another entity; (2) the property can be used in accordance with the provisions of section 363; and (3) the property has more than inconsequential value to the debtor's estate."  *Zazzali v. Minert* (*In re DBSI, Inc.*), 468 B.R. 663, 669 (Bankr. D. Del. 2011) (internal quotation and citation omitted).  "[C]ourts generally agree that the turnover provision 'is not intended as a remedy to determine disputed rights of parties [,] [but] . . . to obtain what is acknowledged to be property of the estate.'"  *Rosen v. Dahan (In re Minh Vu Hoang)*, 469 B.R. 606, 617 (D. Md. 2012) (quoting *In re Suncoast Towers South Assoc.*, Nos. 98-10537-BKC-AJC, 98- 1451-BKC-AJA-A, 1999 WL 549678, at *10 (Bankr. S.D. Fla. June 17, 1999)).  Therefore, to survive a motion to dismiss the Trustee needs to plausibly allege the three elements.

At this time, the turnover count is premature.  The Amended Complaint does not identify any undisputed assets of the estate.  *Pry v. Maxim Glob. Inc. (In re Maxim Truck Co.)*, *Inc.*, 415 B.R. 346, 357 n.4 (Bankr. S.D. Ind. 2009) ("[T]he Trustee's remedy under § 542 for turnover . . . only ripens upon a determination by the Court that the property in dispute is, in fact, property of the estate.").  The court will dismiss Count 13 without prejudice to reasserting a claim for turnover as it becomes necessary.

Finally, the Defendants seek sanctions against the Trustee's counsel under 28 U.S.C. §1927, which provides

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

28 U.S.C. §1927.  Defendants argue that Trustee's counsel has created a "quagmire of interrelated pleadings as to purposefully harass and intimidate the Defendants . . . .  [and] to churn fees and create an excessive billing scheme designed to bleed substantial assets from the Debtor's estate . . . ."  ECF 569 at 4-5 of 41.  Indeed, the original complaint, which named 53 defendants in a 104-page pleading, seemed unnecessarily convoluted to assert the claims that the Trustee ultimately brought against the current 10 defendants in the Amended Complaint.  But the Trustee brought the initial complaint on the heels of a long ongoing skirmish with the many of the defendants over their production of information in response to his Bankruptcy Rule 2004 requests.  *See Madeoy I*, 2015 WL 4879960 at *6-8.  The Amended Complaint does not run afoul of 28 U.S.C. §1927.

## Conclusion

For the foregoing reasons, the court will: (1) grant the motion to dismiss Counts 1, 4, 7, 12 and 13; (2) deny the motion to dismiss Counts 2 and 3 as to Melanie Madeoy and Posey, to the extent of $67,567.34, and grant the motion as to all other defendants;  (3) deny the motion to dismiss Counts 5 and 11 as to the Debtor, Melanie Madeoy, Posey, MRC, AHI, Girard, JTRS, and LWBR and grant the motion as to all other defendants; and (4) deny the motion to dismiss Count 6 as to Melanie Madeoy, Posey, and the Trust and grant the motion as to all other defendants.  All dismissals are with prejudice except for Counts 12 and 13.

cc:     All parties
        All counsel

## END OF MEMORANDUM OF DECISION